# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 4:17-cr-00296-DCN |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| LEX BENNETT GOODWIN, | |
| Defendant. | |

## I. INTRODUCTION

Pending before the Court is Plaintiff United States of America's ("United States" or "Government") Motion in Limine to Admit "Other Act" Evidence. Dkt. 40.[1]

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii).

For the reasons outlined below, the Court will GRANT in PART and DENY in PART the Motion.

///

---

[1] While the United States' Motion itself is found at Docket 40, the brief was previously filed under seal as Docket 28: "Notice of Intent to Admit 'Other Act' Evidence."

## II. BACKGROUND

### A. Procedural Background

On July, 24, 2018, the federal grand jury sitting in Pocatello, Idaho returned an eight-count Second Superseding Indictment against Defendant Lex Goodwin. Dkt. 17.

In Counts one through four, the Indictment alleges that Goodwin produced child pornography images of "Jane Doe I" on or about August 3, 2017, August 12, 2017, August 13, 2017, and September 30, 2017. In count five, the Indictment alleges that Goodwin attempted to produce child pornography images of "Jane Doe II" on or about August 13, 2017. In count six, the Indictment alleges that on or between August 12, 2016, and September 20, 2017, Goodwin knowingly transported child pornography in interstate commerce. In count seven, the Indictment alleges that Goodwin possessed images of child pornography on his Samsung Galaxy S7 cellphone, on a Gateway laptop computer that he used and accessed, and within two separate Google accounts. In count eight, the Indictment alleges that Goodwin committed the felony offenses charged in count one through count five at times when he was required by law to register as a sex offender.

On August 7, 2018, Goodwin entered a plea of not guilty to the Second Superseding Indictment. Dkt. 20. After granting numerous motions to continue (Dkts. 22, 24, 32) the Court set a date of May 20, 2019, for trial. Dkt. 32.

Anticipating trial, the United States filed a Notice of Intent to Admit 'Other Act' Evidence. Dkt. 28. As it became apparent that this case would, in fact, proceed to trial, the United States filed a formal Motion seeking to admit this "other act" evidence. Dkt. 40.

## B. Factual Background

The Court recognizes that the following recitation of the underlying facts is repugnant. Additionally, the Court wishes to limit references to the minor victims in this case as much as possible. That said, background and context are necessary to understand the United States' Motion in Limine and the Court's ruling on the same.

On September 1, 2017, the National Center for Missing and Exploited Children ("NCMEC") received a report from Google indicating that someone had uploaded child pornography to the Google account lexinpocatello@gmail.com. According to the report, four images of child pornography depicting a female child approximately eighteen months old were uploaded to the Google account on August 3, 2017. Exchangeable Image File Format ("Exif")[2] data associated with the four images shows that the images were created on August 3, 2017, less than three hours prior to being uploaded to the Google account. Exif data also shows that the images were created using a camera model SM-G930P, which is the same camera found on a Samsung Galaxy S7 cellphone.

Special Agent Kris Knight with Homeland Security Investigations was assigned to follow-up on the report from NCMEC. SA Knight learned that the IP address associated with the upload of the child pornography to the Google account was tied to the residence of K.T., Goodwin's girlfriend, in Rupert, Idaho. SA Knight also learned that Goodwin

---

[2] Exif data is a standard that specifies the formats for images, sound, and ancillary tags used by digital cameras (including smartphones). Exif data can show the date and time a picture was taken, the type of camera used to take the picture, and, under certain conditions, even the GPS coordinates showing the location where the picture was taken.

was a registered sex offender and on state parole for battery with intent to commit rape. The victim in that case was an adult female.

SA Knight contacted Goodwin's parole officer and learned that he (Goodwin) lived in Pocatello but often spent time at K.T.'s residence in Rupert. SA Knight learned that two female children, one eighteen months old (hereinafter "Jane Doe I") and one seven years old (hereinafter "Jane Doe II") also lived at the residence. The four child pornography images associated with the report from Google were later identified to be sexually explicit images of "Jane Doe I."

SA Agent Knight obtained search warrants for Goodwin's residence in Pocatello, K.T.'s residence in Rupert, and the lexinpocatello@gmail.com Google account. The residential warrants were served on October 5, 2017. The same day that the warrants were executed, SA Knight met Goodwin at the parole office and interviewed him. Goodwin was advised of his Miranda rights and agreed to waive them.

Following the interview—in which Goodwin lied to SA Knight concerning the whereabouts of his phone and his use of the email address lexinpocatello@gmail.com— Goodwin's cellphone, his Gateway computer, and the other electronic devices seized during the investigation were submitted for forensic examination. The forensic examination of Goodwin's electronic devices, as well as additional records received from Google in response to a search warrant, revealed numerous files of child pornography within the lexinpocatello@gmail.com account. SA Knight also located the four pornographic images of "Jane Doe I" that were reported to NCMEC by Google. Within the same Google account, SA Knight found several emails from

lexinpocatello@gmail.com to various females discussing meeting up to engage in sexual activity. SA Knight also found an email from the email address lexinpocatello@gmail.com to the email address lexgoodwin85@gmail.com. Attached to the email was a word document that contained a resume for Lex Goodwin. On August 5, 2017, the lexinpocatello@gmail.com account received a message from Google stating, "Your library is now being shared with lexgoodwin85@gmail.com."

Based on the association with the lexinpocatello account and the lexgoodwin85 account, SA Knight obtained a search warrant for the lexgoodwin85@gmail.com account and reviewed the documents supplied by Google in response to that warrant. SA Knight located numerous files of child pornography within this second account. SA Knight located the same four child pornography files depicting "Jane Doe I" that were the subject of the Google NCMEC report. SA Knight also located several other sexually explicit images of "Jane Doe I." Exif data from those images shows that they were taken on August 13, 2017, and September 30, 2017, using the same type of camera that is found on a Samsung Galaxy S7 cellphone.

Within the same Google account, SA Knight located a series of pictures showing a female child wearing a pink skirt and a blue shirt. The child is shown sitting with her legs apart, and in some of the pictures the child's underwear is moved off to the side to where her genitals are almost exposed. It appears that the images were taken surreptitiously. K.T. subsequently identified the child in these images as "Jane Doe II."

On Goodwin's Samsung S7 cellphone, SA Knight located several of the same sexually explicit images of "Jane Doe I" that were located within the

lexgoodwin85@gmail.com account. On Goodwin's cellphone, SA Knight also located a set of three images depicting an adult male posing with a pair of child's underwear. The child's underwear in this picture were later identified as belonging to "Jane Doe II" and the same underwear was collected from K.T.'s residence. Exif data from the images shows that they were created using a Samsung S7 cellphone on August 23, 2017. The Exif data also contains GPS coordinates showing that the pictures were taken at K.T.'s residence in Rupert.

Finally, on the Gateway computer, SA Knight located several files of child pornography. Most of the child pornography was located within an application called Blue Stacks, which is a program that allows a PC computer to operate like an Android cellular phone. SA Knight also located Google search history and internet website history related to child pornography and a sexual interest in children. The internet history is dated between June 30, 2015, and July 3, 2015.

### III. LEGAL STANDARD

#### A. Motion in Limine Standard

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cty.*, No. 4:15-CV-00156-DCN, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (citing *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)). "The term 'in limine' means 'at the outset.' A motion in limine is a procedural mechanism to limit in advance testimony or

evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (citation omitted) "a district court has discretion in ruling on a motion in limine." *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

### B. Federal Rule of Evidence 404(b)

Rule 404(b) of the Federal Rules of Evidence governs the admissibility of evidence concerning "other crimes, wrongs, or acts" committed by a defendant. That Rule provides as follows:

> (1) Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1)-(2). The Ninth Circuit has specified that "Rule 404(b) is a rule of inclusion." *United States v. Alfonso*, 759 F.2d 728, 739 (9th Cir. 1985). "Thus, evidence of past wrongful acts is admissible if it is relevant to an issue other than the defendant's character or criminal propensity." *Id.*

To prove that the evidence is offered for one of the permitted purposes under Rule 404(b), the Government must show that the evidence: (1) is offered to prove a material element of the current offense; (2) if admitted to prove intent, is similar to the offense charged; (3) is based on sufficient evidence; and (4) is not too remote in time. *United States v. Ramirez–Robles*, 386 F.3d 1234, 1242 (9th Cir. 2004). "The [G]overnment must also show that the evidence satisfies Federal Rule of Evidence 403 such that its probative value is not outweighed by its prejudicial effect." *Id.*, *see also United States v. Benitez*, No. 1:17-CR-00348-BLW, 2018 WL 6591917, at *2 (D. Idaho Dec. 14, 2018).

### C. Federal Rule of Evidence 403

If evidence of prior acts is found to be probative of motive, intent, plan, or lack of accident under Rule 404(b), the Court must consider whether the evidence is nevertheless barred under Federal Rule of Evidence 403. This Rule provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Unfair prejudice refers to an undue tendency to influence a decision on an improper basis, such as an emotional response, or with evidence designed to elicit a response from the jurors that is not justified by the evidence. *See U.S. v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998). Even if there is only a modest likelihood of unfair prejudice or a small risk of misleading the jury, evidence that presents only slight probative value must be excluded. *See U.S. v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

Additionally, cumulative evidence may also be excluded because it does no more than replicate other admitted evidence. *See, U.S. v. Ives*, 609 F.2d 930, 933 (9th Cir. 1979).

**D. Federal Rule of Evidence 414**

Finally, Federal Rule of Evidence 414 provides that, in a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation on any matter to which it is relevant. "Child molestation" includes a crime under federal or state law involving:

(A) Any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child;
(B) Any conduct prohibited by 18 U.S.C. chapter 110;
(C) Contact between any part of the defendant's body – or an object – and a child's genitals or anus;
(D) Contact between the defendant's genitals or anus and any part of a child's body;
(E) Deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on a child, or;
(F) An attempt or conspiracy to engage in conduct described in subparagraphs (A) – (E).

Rule 414 specifically allows the Government to use evidence of a defendant's other acts for the purpose of demonstrating to the jury that the defendant had a disposition of character, or propensity to commit crimes involving child molestation. Prior to 1994, admission of a defendant's prior crimes or acts was governed by Rule 404(b), which generally disallows such evidence when used to prove character in order to show action in conformity therewith. *See United States v. LeMay*, 260 F.3d 1018, 1024 (9th Cir. 2001). Rule 414 "changes this general rule with respect to child molestation cases." *Id.*

To be admissible, the evidence of other acts of child molestation must be relevant under Federal Rule of Criminal Procedure 104(b). *See United States v. Norris*, 428 F.3d 907, 913-914 (9th Cir. 2005). In determining whether there is sufficient evidence to satisfy Rule 104(b), a district court "is not required to make any preliminary finding that the government has proved the conditional fact." *Id.* Instead, the court "simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact" – that the defendant committed the other act of molestation – "by a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted). Under Rule 414(a), "the key to admissibility is relevance, and no independent evidence of the commission of the prior bad act is required." *Id.* at 913. The other act of child molestation may be proved through the introduction of a judgment of conviction, through the testimony of the victim, or even through the defendant's own admissions. *See United States v. Redlightening*, 624 F.3d 1090, 1120 (9th Cir. 2010).

## IV. ANALYSIS

In its motion, the Government asserts that it intends to introduce "other act" evidence in four circumstances. The Court will address each in turn.

**A. Evidence that between May and June of 2009, the defendant communicated electronically with T.C. and discussed his sexual interest in children and requested that T.C. take nude photographs of children and send them to him.**

T.C. is an adult woman living in Indiana. Goodwin met T.C. online sometime

during 2008-2009.[3] The two became online friends and subsequently began texting and calling each other on the phone. Goodwin and T.C. eventually began having conversations of a sexual nature.

At some point, Goodwin began making comments that were disturbing to T.C. For example, Goodwin stated that he had been having sexual fantasies about children since he was a child. At the time, T.C. had two daughters who were ages 11 and 13. Goodwin referenced wanting T.C. to take nude pictures of her children, her nieces when she babysat them, or any other children who she was watching. Goodwin made comments about wanting to take T.C.'s child's virginity, have a baby with her minor daughter, and that he wanted T.C. to move to Idaho and have a child with him so he could rape their baby. During one conversation—in which T.C. told Goodwin she was at Walmart— Goodwin told T.C. to find a child at the store, take the child into the dressing room, take nude photographs of the child, and send the photographs to him. Goodwin also told T.C. how to access specific child pornography websites.

Ultimately, T.C. contacted Goodwin's probation officer and the Pocatello Police Department. When interviewed, Goodwin initially denied knowing T.C. Later he admitted that he knew her. Goodwin also initially denied that he had said anything relative to T.C.'s daughters or regarding child pornography. When confronted with evidence—in the form of text messages—Goodwin claimed that T.C. had fantasies about

---

[3] It is not entirely clear from the record when Goodwin and T.C. met, however, it appears they met in late 2008 or early 2009.

children and sex and the only reason he said those types of things was because he thought that was what T.C. wanted to hear and that he wanted to keep her happy so that she would provide him with financial assistance.

Goodwin was never charged with a crime related to his conduct with T.C. He was, however, charged with violating his probation, and the conduct with T.C. was included in the report of violation from his probation officer. Goodwin was ultimately sent to prison following the probation violation, and remained there until he was paroled in approximately July of 2014.

The United States wishes to introduce evidence of Goodwin's communications with T.C. during May and June of 2009. Because the grand jury in this case indicted Goodwin on criminal charges regarding the production, transportation, and possession of child pornography—offenses which are violations of 18 U.S.C. chapter 110 and are therefore considered "child molestation" offenses under Rule 414—and because Goodwin's request that T.C. take nude photographs of her children would also be a violation of 18 U.S.C. chapter 110 (even though Goodwin was never formally charged) this conduct is admissible under Rule 414. However, the Court must still determine if the evidence is relevant and admissible under Rule 404(b) and Rule 403.

Goodwin asserts that the information regarding T.C. is irrelevant, old, and that allowing the United States to introduce it would be unfairly prejudicial. In Goodwin's view, the United States seeks to introduce his old conversations with T.C. to show that he had a sexual interest in children and that he knew search terms to find child pornography. Because the United States will submit other evidence to prove both of these points,

Goodwin asserts that these conversations are duplicative, and the probative value is minimal. Further, Goodwin argues that introducing such conversations is prejudicial as it will inflame the jury and "move jurors to make an emotional decision about Defendant's guilt," Dkt. 42, at 3.

It is true that the United States intends to introduce evidence that Goodwin produced and stored child pornography on his phone and that he accessed child pornography (in addition to the images of Jane Doe I and Jane Doe II) on his phone and computer. The Court agrees that this information would likely be sufficient to establish that Goodwin had a sexual interest in children and knew how to access child pornography.

That said, it does not appear—as Goodwin suggests—that the Government's sole purpose in presenting this material is to show that Goodwin had an interest in (and knew how to access) child pornography. The United States expresses concern that Goodwin will argue that he did not upload the images on his phone (that another person did or that his phone was hacked), and that the images and accounts on the computer (as it was a shared computed) are likewise not his.

The Court sees this as a realistic concern. First, while there is no way to know whether Goodwin will actually make such an argument at trial, waiting until that time to make such a ruling is not feasible. T.C. lives in Indiana. The Court cannot wait until Goodwin asserts such a defense to determine whether T.C. will be allowed to testify on these matters—by then it will be too late. Furthermore, it is within the United States' purview to anticipate, and address, defenses in its case-in-chief. *United States v. Curtin*,

489 F.3d 935, 940 (9th Cir. 2007) ("Federal courts repeatedly have held that the government may offer evidence in its case-in-chief in anticipation of an expected aspect of the defense.").

Second, even with the overwhelming evidence (including Exif data) that shows Goodwin's phone, email accounts, and a computer he had access to all contained child pornography, the Court has not seen as much evidence linking Goodwin to those items—aside from the normal inference that a person uses his or her own devices and accounts.[4] In short, it appears the evidence regarding Goodwin's conversations with T.C. is critical to the Government's case.

More importantly, however, the Court finds that this information is highly relevant, as Goodwin's prior behavior and communications with T.C. are strikingly similar to the charges in this case. The prior conversations are probative on the issue of whether Goodwin was the person responsible for producing the images of the victims, whether he intended the images to be sexual in nature, and whether he knowingly and intentionally possessed and transported other images of child pornography. Accordingly, it seems clear that the United States does not want to present this evidence simply to paint Goodwin in a bad light, but to show Goodwin's "motive, intent, knowledge and identity as it relates to counts one through five, as well as his motive, intent, knowledge, identity, and absence of mistake as it relates to the other counts, which allege possession and

---

[4] To be sure, the Court is not weighing the evidence at this time, but rather finds that this type of evidence may be relevant (regardless of what weight it is given) to the matters at hand.

transportation of child pornography." Dkt. 28, at 15. This is a reasonable application of Rule 404(b).

While there may be some prejudicial effect in light of the disturbing content of the communications, this is unfortunately a case where much more disturbing content will be presented to the jury. After all, these communications contain no images or videos—they are simply text messages.[5] In sum, this material, in and of itself, will not be so inflammatory as to prohibit its use and the probative value outweighs any prejudice that may result. This portion of the United States Motion is GRANTED.

**B. Evidence that there were images found on the defendant's Samsung cellphone showing "Jane Doe II's" underwear on the defendant's bare and erect penis.**

In its second request, the United States explains that it intends to introduce three images depicting "Jane Doe II's" underwear on Goodwin's bare and erect penis, testimony regarding where the images were located, and what Exif data was found in the images.

Goodwin claims that the only reason the Government would need this information is to prove when, where, and how the images were taken —and on what type of device— and that, similar to the above, these concepts can be proven via other means. Because the images themselves are irrelevant to establishing the type of camera at issue and where the

---

[5] Along with the text messages there are police reports and an audio recording. The admissibility of the latter materials is not before the Court at this time, however if foundation, authenticity, and relevance can be established at trial, these materials could be introduced into evidence consistent with this opinion.

images were taken, Goodwin asserts that the "images of the underwear and the penis will do [nothing] to assist the jury to decide whether the elements of the charges have been proven." Dkt. 42, at 3.

The Court disagrees. To be sure, one purpose of introducing these images is to establish that these images were taken with the same type of camera, in the same location, and during the same time frame as other images of Jane Doe I and Jane Doe II. This information is relevant and necessary to the Government's case and its ability to tie Goodwin to the images and accounts that form the basis of the charged crimes.

However, a second, and more important reason these pictures are relevant is to show Goodwin's propensity for, and interest in, children and sex. The images depict underwear belonging to "Jane Doe II," who is the victim identified in count 5. These images are, therefore, not ancillary to the issues in this case, but are part and parcel to charges of child pornography. While there is no child in these particular pictures, they are sexual in nature, and when looked at under the totality of the circumstances, are intertwined with the other photos Goodwin took of Jane Doe II in an effort to produce child pornography.

Citing *United States v. Dorsey*, the Government points out that the Ninth Circuit has held that there are "[t]wo general categories of other act evidence" that may be considered "inextricably intertwined" with the charged crime and, thus, exempted from the requirements of Rule 404(b). 677 F.3d 944, 951 (9th Cir. 2012). The first category is other act evidence that may constitute "a part of the transaction that serves as the basis for the criminal charge." *Id*. at 951 (citing *United States v. Vizcarra-Martinez*, 66 F.3d 1006,

1012 (9th Cir. 1995)). The second category is other act evidence "that may be necessary . . . to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Dorsey*, 677 F.3d at 951 (citing *Vizcarra- Martinez*, 66 F.3d at 1012-13).

Under the circumstances, the Court must agree. As noted above, these images depict behavior that is consistent with an interest in children and sex and are part of the story regarding the crime Goodwin is charged with—in other words, this evidence is related to "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Accordingly, the Court finds that these images are not excluded under Rule 404(b). This portion of the United States' Motion is GRANTED.

### C. Evidence of emails sent from the lexinpocatello@gmail.com account to various females requesting to engage in sexual activity.

In this request, the Government asks for a ruling that it be allowed to introduce evidence of emails sent from one of Goodwin's email accounts to adult women regarding sexual activity. The emails at issue were sent in July 2017 and appear to be communications in response to Craigslist's ads propositioning sex.

The government contends that—like the images of the underwear discussed above—these emails are inextricable intertwined with the charged conduct and not subject to Rule 404(b). In its estimation, the fact that several files of child pornography— including images of Jane Doe I—are located within this same email account cuts in favor of a finding that these emails are part of the whole story. Additionally, the Government

asserts that it needs to be able to introduce such emails to illustrate that Goodwin was the owner/operator of this email account.[6]

The Court disagrees. The emails from Goodwin to other women have no bearing on this case. Frankly, the type of behavior Goodwin engaged in there was not illegal. More importantly—addressing the argument that these emails prove ownership—the Government already intends to introduce other emails[7] to establish that Goodwin was the owner and operator of this account. These emails to and from other women, therefore, would be redundant, irrelevant, and potentially prejudicial.[8]

Where the conduct outlined in these emails is not intertwined with the current charges, the Court finds that this evidence does fall under Rule 404(b). Furthermore, as this conduct is not even related to the issues of child pornography, it also is irrelevant under Rule 403. The Court, therefore will not allow it to be introduced into evidence.

*If* Goodwin does take the position that the lexinpocatello@gmail.com account is not his, that others used the account, that it was shut down/inactive, or that the

---

[6] The Government intends to introduce emails that reference Goodwin being from Pocatello, and emails that clearly show that the communications are from a male to females (in an effort to refute Goodwin's [anticipated] argument that he did not send those emails). These emails were sent in July 2017, less than one month before the images of Jane Doe I were taken and uploaded.

[7] The United States can introduce emails that include Goodwin's resume, emails that show the various accounts were "shared" or "synced," emails showing the images of Jane Doe I and/or Jane Doe II, or any other emails it deems necessary as long as such emails do not include material concerning solely potential sexual encounters with adults.

[8] Although as the conduct is technically legal, there should not be any real prejudice that would result from sharing such information.

aforementioned emails do not clearly establish that he was the primary user of the account—i.e. if he "opens the door"—the Court would entertain a renewed motion at trial to introduce this evidence. Any such motion must be made outside the presence of the jury.

The Government's request regarding emails to adult females requesting to engage in sexual activity is DENIED.

**D. Evidence of search terms and internet history that were found on the Gateway laptop computer that relate to child pornography and a sexual interest in children.**

In its final request, the Government explains that it intends to introduce evidence of certain search terms and internet browser history found on the Gateway laptop. The search terms at issue relate to child pornography and a sexual interest in children. The Government again alleges that this information serves as direct evidence of the crimes at issue and is not 404(b) evidence. The government claims that even if this information was subject to Rule 404(b), it would nonetheless be admissible as it is highly probative of Goodwin's motive, knowledge, intent, and lack of mistake regarding the crimes charged.

The Court disagrees. To be clear, the problem is not that the Government's position is misplaced—such evidence has been allowed under similar circumstances[9]—

_____

[9] *See United States v. Cunningham*, 607 F. App'x 715, 716 (9th Cir. 2015) (holding that evidence the defendant purchased an online video depicting child pornography was admissible during his trial on production of child pornography charges because the evidence demonstrated a sexual interest in children and that the defendant did not inadvertently take pictures of the child victim); *United States v. Tanguay*, 982 F. Supp. 2d 119, 122 (D.N.H. 2013) (holding that evidence found

but that certain aspects of its position will be proved via other means and that other aspects have yet to be established.

First, there is no reason to introduce this evidence to show that Goodwin had a sexual interest in children or that he knew how to access child pornography. Goodwin's sexual interest in children will be apparent from all the other evidence in this case. Additionally, the specific fact that Goodwin knew terms to search will also likely come into evidence via T.C.'s testimony regarding the same. In short, this duplicative evidence is unnecessary.

Second, and more importantly, while there is evidence showing that Goodwin used the Gateway laptop at issue, there is also evidence that other individuals used this particular laptop as well. Allowing the Government to introduce this evidence would, therefore, be unfairly prejudicial to Goodwin unless it can somehow tie this search history directly to him.

The Government does not dispute that other people may have had access to the Gateway laptop, but argues that the search terms it seeks to introduce are indicative of the behavior that Goodwin engaged in in this case, and thus logically came from him. This internet history, however, occurred between June 30, 2015, and July 5, 2015—over two years before the events in question here—and is a small snapshot in time. To be sure,

---

on the defendant's computer involving bookmarks to websites with names that suggested sexually explicit material involving children was admissible to show that the defendant knowingly possessed child pornography); *United States v. Hite*, 916 F. Supp. 2d 110, 120 (D.D.C. 2013) (holding that browser history indicative of child pornography was admissible to prove the defendant's intent to entice or coerce a minor to engage in sexual activity).

there are some search terms that are more indicative of the type of behavior Goodwin is charged with under the Indictment, but there are other terms which are more general pornography terms.

Because of the timing issue, as well as the uncertainty surrounding who had access to the laptop, the Court will not allow this evidence in at this time. However, if the Government can tie the search terms and browser history *directly* to Goodwin,[10] the Court's decision may change. Until that happens, however, this request is DENIED. During trial, if the United States believes it has proffered enough evidence to reliably establish this point and wishes to introduce the search terms, it must do so by a motion outside the presence of the jury. Additionally, if Goodwin asserts in his case-in-chief that he doesn't know how to research child pornography or that he would never engage in such research, the Government may be able to argue that Goodwin has opened the door sufficiently to allow it to put the search history into evidence. Again, such an argument must first be made outside the presence of the jury.

## V. ORDER

The Court HEREBY ORDERS:

1. The United States' Motion in Limine (Dkt. 40) is GRANTED in PART and

---

[10] For example, if the United States introduces evidence that during the relevant time (in 2015) the Gateway laptop was kept at only one house and Goodwin was the sole occupant of that house, or if it can illicit testimony that no other individuals used that laptop at that time, such would likely be sufficient to establish the fact that the search history came from Goodwin. Absent such a showing, however, the Court will not allow speculative evidence to be presented.

DENIED in PART as outlined above.

DATED: May 13, 2019

David C. Nye
Chief U.S. District Court Judge