1              IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF IDAHO

3    UNITED STATES OF AMERICA,    )
                                  )    Case No. 4:17-cr-296-DCN
4              Plaintiff,         )
                                  )    Pocatello, Idaho
5         vs.                     )    May 20, 2019
                                  )    1:04 p.m.
6    LEX BENNETT GOODWIN,         )
                                  )    Jury Trial, Day 1
7              Defendant.         )    Jury Selection
     _____ )

8                     TRANSCRIPT OF PROCEEDINGS
9              BEFORE THE HONORABLE DAVID C. NYE
        UNITED STATES DISTRICT COURT CHIEF JUDGE, AND A JURY

10

11   APPEARANCES:

12   For the Government:

13            KASSANDRA MCGRADY, AUSA
              United States Attorney's Office
14            District of Idaho
              800 Park Boulevard, Suite 600
15            Boise, ID 83712
              208-334-1155
16
              JOHN CHRISTOPHER SHIRTS, AUSA
17            United States Attorney's Office
              District of Idaho
18            801 East Sherman Avenue
              Pocatello, ID 83201
19            208-478-4166

20

21

22
     Court Reporter:  Katherine Eismann, CRR, RDR
23                    katherine_eismann@id.uscourts.gov
                      702-409-3556
24
     Proceedings reported by machine shorthand.  Transcript produced
25   by computer-aided transcription.

1    Appearances continued:

2    For the Defendant:

3              MANUEL TRAVIS MURDOCH, ESQ.
              Murdoch Law Office, PLLC
4              P.O. Box 822
              Blackfoot, ID 83221
5              208-785-1650

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Monday, May 20, 2019, 1:04 p.m.)

2                          --oOo--

3                    P R O C E E D I N G S

4        (Jury out.)

5             JUDICIAL ASSISTANT:  All rise.  United States

6    District Court for the District of Idaho is now in session, the

7    Honorable David C. Nye presiding.

8             THE COURT:  Please be seated.  Good afternoon.

9             MR. MURDOCH:  Hello, Judge.

10            MR. SHIRTS:  Good afternoon, Your Honor.

11            THE COURT:  We are on the record.  We are outside the

12   presence of the jury.  Just a couple of matters I wanted to go

13   over before we get started.

14            Mr. Murdoch, I don't know if your client needs to be

15   here for this or not.

16            MR. MURDOCH:  I guess what are we doing and --

17            THE COURT:  All I'm going to do is talk about some

18   procedural matters, like the alternate juror and whether or not

19   we have one.

20            MR. MURDOCH:  I don't think he needs to be here for

21   it.

22            THE COURT:  All right.  Well, that's the first

23   question is, normally, I don't use an alternate juror.  Given

24   the nature of this case, I'm seriously thinking I will unless

25   the parties want to stipulate that we can go forward with 11

1   jurors if we lose one.  I -- I think it's almost easier just to

2   have an alternate.

3              MR. MURDOCH:  Yeah.

4              MS. MCGRADY:  Yes, Your Honor.  That would be the

5   government's preference as well.

6              THE COURT:  Okay.

7              MR. MURDOCH:  Likewise.

8              THE COURT:  Well then, that means that the defense

9   will end up with a total of 11 preempts, the government will

10  end of with a total of seven, and that's how we've got the

11  seating arranged right now.  So, we'll do that.

12             Second thing, I don't think I have told either one of

13  you, although Manuel may know this from state court, I require

14  the parties to disclose their next day's witnesses by 5:30 of

15  the day prior.  So, today you have to let me know what

16  tomorrow's witnesses -- who they will be tomorrow.  I just

17  think that's the only fair way to do it all the way through

18  trial regardless of who's up the next day.  So, I am going to

19  require that in this case.

20             MS. MCGRADY:  And, Your Honor, include the Court on

21  the email or just to counsel?

22             THE COURT:  Include Amy on the email, yes.

23             MS. MCGRADY:  Okay.  Thank you.

24             THE COURT:  Yes.  I think that's -- well, let me just

25  say, the only other thing I have is we have turned off the

monitors on the back tables and on the side over here, and we

have dimmed the ones that lawyers -- counsel, I don't know if

there will be anybody in the gallery or not, but they don't

need to see any pictures that are shown, so we've tried to dim

everything.  And we have turned the TV a little bit so they

won't see it.  We are going to use the large screen TV rather

than the projector.

            So, is there anything either of you have?

            MR. MURDOCH:  Nothing from the defense, Your Honor.

            MS. MCGRADY:  Your Honor, just for purposes of today,

defense counsel and I spoke on Friday, and we actually

stipulated to the admission of many of the exhibits that the

government's going to be offering.  So, if the Court has time

today or we could do it tomorrow, we could go through a list of

stipulations and admit exhibits ahead of time, which I think

will expedite things.

            In addition to that, when we were speaking,

Mr. Murdoch indicated to me that he was going to be lodging

just a general objection to any evidence found on the Gateway

computer, which I -- I hadn't realized was going to happen.

That is part of the government's possession case.  It's listed

in the forfeiture allegation, and I had intended to speak about

that in opening.

            So, because of that, I thought that perhaps some

argument on that before we started opening statements would be

1    prudent instead of having an objection to my opening statement.

2            THE COURT:  How far, counsel, do you think we are

3    going to get today?  Obviously, I want to get the jury picked.

4    Are we going to get to opening statements do you think?

5            MS. MCGRADY:  No, Your Honor.  I do not think so.  I

6    think counsel -- how defense counsel and I figured this would

7    go is we would just be selecting the jury today.  I would be

8    surprised if we could do it in under three hours, and so then

9    it wouldn't -- it wouldn't be prudent to, I think, start with

10   instructions and opening that late in the day.

11           THE COURT:  Yeah.  What I would suggest is let's see

12   how long it takes to pick the jury, but assuming it's after

13   4:00, 4:00 or later, yeah, I agree with you.  We'll just pick

14   up in the morning, and maybe that last hour we can use for this

15   argument and the stipulations.

16           MS. MCGRADY:  Thank you.

17           THE COURT:  Anything else that needs to be discussed

18   today?

19           MR. MURDOCH:  No, Your Honor.

20           MS. MCGRADY:  No, Your Honor.  Thank you.

21           THE COURT:  All right.  Then we are going to take a

22   break.  Yes, ma'am.

23           JUDICIAL ASSISTANT:  Do you want to let them know

24   about the two excused jurors?  They know one.

25           THE COURT:  I excused one juror this morning because

1  she's a nursing mother, and I just figured not to even have her

2  come in.  The other one that I excused -- or is it the missing

3  one?

4          JUDICIAL ASSISTANT:  There's a missing one, just so

5  you know.  Do you want me to tell the name of the juror on the

6  record or no?

7          THE COURT:  No, that's fine.  You can tell them.

8          MR. SHIRTS:  It's Mickie Dixie.

9          THE COURT:  She's the nursing mother.

10          MS. MCGRADY:  Dixie?  Thank you.

11          JUDICIAL ASSISTANT:  And then the other one they

12  excused on Friday.

13          MS. MCGRADY:  Was one of the government's potential

14  witnesses?

15          THE COURT:  Yes.  That's correct.

16          MR. SHIRTS:  And the only missing one is

17  Mr. Pedraza-Lemeli.

18          THE COURT:  And he just simply hasn't shown up to our

19  knowledge.

20          MS. MCGRADY:  Okay.

21          THE COURT:  In 12 years as a judge, I have never had

22  a juror that was also a witness.  So, this was a first for me.

23          MS. MCGRADY:  I was shocked, too.

24          THE COURT:  So, okay.  Anything else now?  I think

25  that leaves us with exactly 50?

1            JUDICIAL ASSISTANT:  49.

2            THE COURT:  49 now is what we've got.  And we'll put

3    everybody up in the box and in front of it that could be enough

4    that we can get our 12 plus the alternate plus all the

5    preempts.  So, anybody that's up there will be in that

6    category.  Okay?

7            MS. MCGRADY:  Okay.

8            THE COURT:  All right.

9            MS. MCGRADY:  Thank you.

10            THE COURT:  We will bring in the jury in just a

11    minute, and we'll be in recess till then.

12        (Recess 1:10 p.m.  Resumed 1:26 p.m.  Prospective jurors

13    in.)

14            THE COURT:  Please be seated.

15            COURTROOM DEPUTY:  Court will now hear the jury trial

16    in Case Number CR-17-296, United States of America versus Lex

17    Bennett Goodwin.

18            THE COURT:  Counsel, are you ready to proceed?

19            MS. MCGRADY:  Yes, Your Honor.

20            MR. MURDOCH:  Yes, Your Honor.

21            THE COURT:  Good afternoon, ladies and gentlemen.  My

22    name is David Nye, and I am the judge of this court assigned to

23    try this case.

24            I will be assisted by my courtroom deputy, Pam

25    Fulwyler, the court reporter, Kathy Eismann, and my judicial

1    assistant/paralegal, Amy Beers.

2              You have been summoned as prospective jurors in the

3    case of the United States of America versus Lex Bennett

4    Goodwin, Case Number 17-cr-296.  It is a criminal case.

5              Roll call was previously called downstairs in the

6    jury assembly room, and you were each given a random seating

7    number.  Those of you who are sitting in the jury box or

8    immediately in front of the box are now sitting in accordance

9    with your seating number.

10             Even if you are not one of the ones sitting up front,

11   you may be called forward later.  If so, then you will need to

12   respond to all of the questions that have been asked, so please

13   listen carefully to the instructions and questions throughout

14   this process.

15             We are about to begin the jury selection process in

16   this case.  Before we start, I'm going to have my courtroom

17   deputy swear you in as prospective jurors.  By taking this

18   oath, you swear or affirm that you will answer truthfully any

19   questions asked of you during this process.

20             Will all of the prospective jurors please stand and

21   raise your right hand.

22             COURTROOM DEPUTY:  You each do solemnly swear that

23   you will truthfully answer the interrogations of the Court and

24   counsel touching upon your qualifications to sit as trial

25   jurors in the case now on trial, so help you God?

1        (Chorus of "I do.")

2            THE COURT:  Please be seated.  Was there any of you

3   who were unable to answer that oath with a yes?  No response.

4            Ladies and gentlemen, I am going to ask you a number

5   of questions about yourselves.  They are not designed to pry

6   unnecessarily into your personal lives or affairs.  The purpose

7   of these questions is to enable the Court to determine whether

8   or not any prospective juror should be excused for cause and to

9   enable counsel for the parties to exercise their individual

10  judgment with respect to peremptory challenges, that is

11  challenges for which no reason need be given.

12            By asking these questions, we seek to assure that --

13  each party that the jury in this case will be fair and

14  impartial.  Please do not withhold information in order to be

15  seated on this jury.  Please also do not make up information to

16  get off the jury.  Be straightforward in your answers rather

17  than answering in the way you feel the lawyers or I expect you

18  to answer.

19            If your answer to a question is "yes," please raise

20  your hand so that additional follow-up questions can be asked.

21  If your answer to a question is "no," you need do nothing.  If

22  at any time you would prefer to approach the bench to answer a

23  question privately rather than answer in front of the entire

24  panel, please feel free to so indicate.  But I warn you that by

25  private, I mean myself, the attorneys, the defendant will all

1    be there together while you answer that question.

2              Again, those prospective jurors who are not sitting

3    up front should listen closely to the questions asked as you

4    may be substituted onto the panel as jurors are excused.

5    However, you do not need to raise your hand if your answer to a

6    question is "yes."  Just remember to tell me about it if you

7    are called forward to replace someone.

8              I recognize -- well, before I get into that, let me

9    just say, in my courtroom, I like to keep things as private and

10   confidential as possible.  So, rather than by referring to any

11   of you by name, you each have been assigned a number.  We will

12   use that number throughout the jury selection process.

13             Each of you, at least those of you up here, should

14   have found a laminated document on your chair when you entered

15   the room.  We will begin by having each of you in turn answer

16   the questions listed on that document.  So Juror Number 1, do

17   you have that document?

18             PROSPECTIVE JUROR:  Yes.  My occupation is I'm --

19             THE COURT:  Just a minute.  We're going to try and

20   use the karaoke mike so we can hear you.

21             PROSPECTIVE JUROR:  Is it working?

22             THE COURT:  Yes, it is.

23             PROSPECTIVE JUROR:  Okay.  My occupation is I am the

24   Executive Director of the Domestic Violence and Sexual Assault

25   Center in Idaho Falls.  I do supervise others.  My spouse is

1   retired law enforcement.  He was a lieutenant for Bonneville

2   County Sheriff's Office.  I do have children.  They are all

3   adults.  They work in various occupations of labor.

4           I have never been selected to serve on a jury.  I

5   completed my GED, and I have never studied law.

6           THE COURT:  Thank you.  Juror Number 2.

7           PROSPECTIVE JUROR:  I am a licensed cosmetologist.  I

8   am married.  My husband's an IT manager.  We have two children.

9   I've got a two-year-old and a three-year-old.  I have never

10  been selected.  Yeah, never been selected.  My education is

11  high school, and I have never studied law.

12          THE COURT:  Thank you.  Juror Number 3.

13          PROSPECTIVE JUROR:  I work two part-time jobs right

14  now.  I work at a respite care center helping younger children

15  that come from difficult homes, basically, and I'm also working

16  at -- it's called Unforgettable Events.

17          I'm not married.  I don't have children.  I have

18  never been on a jury before.  I have my Associate's in Arts and

19  I have never studied law.

20          THE COURT:  Thank you.  Juror Number 4.

21          PROSPECTIVE JUROR:  Hello?  Let's see.  I was a

22  long-time video game artist.  Currently, I teach at ISU as an

23  adjunct, Creative Suite.  My wife is a tenured track professor

24  at ISU.  We've been married for 25 years.  I have two children,

25  23 and 25, both daughters.

1      Their occupations, I guess one's in grad school and

2  the other one is started a career.  Let's see.  I have never

3  been on a jury before.  I have a Bachelor of Fine Arts, and I

4  have not studied law.

5           THE COURT:  Thank you.  Juror Number 5.

6           PROSPECTIVE JUROR:  I'm a retail store manager.  I do

7  supervise others.  I am not married.  I'm divorced, and I have

8  one adult child.  Let's see.  I have never been selected as a

9  member.  And let's see.  My education was high school, and I

10  have never studied law.

11           THE COURT:  What is the name of the retail store?

12           PROSPECTIVE JUROR:  Oh, I work for Gas 'n Grub, Idaho

13  Falls.  Sorry.

14           THE COURT:  That's fine.  Juror Number 6.

15           PROSPECTIVE JUROR:  I am self-employed.  Oil field

16  consultant.  I do supervise others.  My spouse is a

17  stay-at-home mom.  I have three kids, ages three months, three

18  years, and six years.  Never been selected for a jury.  High

19  school education.  Never studied law.

20           THE COURT:  You have grown up a bit since I last saw

21  you.

22           PROSPECTIVE JUROR:  Yeah.

23           THE COURT:  Juror Number 7.

24           PROSPECTIVE JUROR:  I am an admissions representative

25  for Teton Valley Health.  My spouse is a roofer.  We have three

1   children, 17, 15, and 8.  I have never been a juror.  And my

2   education is high school, and I have never studied law.

3           THE COURT:  Number 8.

4           PROSPECTIVE JUROR:  I am an X-ray tech.  I do

5   supervise others.  My spouse is retired.  I have an adult

6   daughter who is in retail and a 16-year-old son.  I have never

7   been a juror.  I have a Bachelor's of Science, and I took some

8   law classes with my bachelor's degree.

9           THE COURT:  What's your bachelor's in?

10          PROSPECTIVE JUROR:  It's radiologic technology, so it

11  was medical law.

12          THE COURT:  Okay.  Thank you.  Juror Number 9.

13          PROSPECTIVE JUROR:  Good afternoon.  I'm the managing

14  partner for Parmenter Rivera.  I'm a criminal defense attorney,

15  CJA panel attorney, Bingham County Public Defender.

16          I have -- I'm married.  My wife is a stay-at-home

17  mom.  I have four kids, ages 10, 8, 6 and 2.  Or four, rather,

18  10, 8, 6 and 2.  I obviously have a -- I have never been on a

19  jury.  I've never had the opportunity.  I have a Juris

20  Doctorate from William S. Boyd School of Law, and I think that

21  covers it.

22          THE COURT:  You are also on our federal panel, aren't

23  you, for defense attorneys?

24          PROSPECTIVE JUROR:  I am.

25          THE COURT:  Okay.

1          PROSPECTIVE JUROR:  I am a stay-at-home mom.  My

2     husband is a farmer.  I have three children.  They are 15, 13

3     and 11.  I have never been on a jury, and I have a Bachelor of

4     Science, and I have never studied law.

5          PROSPECTIVE JUROR:  I am a secretary in an accounting

6     office.  My spouse works as a Hyster driver in the box factory.

7     We have four children, 17, 16, 14, and 11.  I have never been

8     on a jury.  And I have a high school education.  Never studied

9     law.

10          THE COURT:  Juror 12.

11          PROSPECTIVE JUROR:  My work is development

12     researcher.  I work for a company in Blackfoot that builds farm

13     equipment.  I don't supervise others.  My spouse is just a

14     stay-at-home mom.  I have seven kids, 26, 25, 18, 14, 8 and 4

15     [sic].  Never been selected as a jury member.  I have a high

16     school education, and I never studied law.

17          THE COURT:  Thank you.

18          PROSPECTIVE JUROR:  I am a landscaper.  My husband is

19     a river guide and construction worker.  I have two children, a

20     12-year-old and a 14-year-old.  I have never been selected to

21     be on a jury.  I have a high school education, and I have never

22     studied law.

23          THE COURT:  Thank you.

24          PROSPECTIVE JUROR:  I am a stay-at-home mom, and my

25     husband is a mechanical engineer at Fluor Idaho.  I have three

1    children, 4, 2 and 1.  And I have never been selected as a

2    member of any jury.  And my education, I have a college

3    education, and I have studied medical law and ethics.

4              THE COURT:  Thank you.

5              PROSPECTIVE JUROR:  I am a product owner for an

6    electronic health records company.  I do supervise others.  My

7    spouse is an adjudicator for the Idaho Department of Labor.  I

8    have one daughter who is 13.  I have never been on a jury

9    before.  I have a bachelor degree in psychology and a master's

10   in forensic psychology.  And other than how that -- few law

11   classes along with that forensic psychology degree.

12             PROSPECTIVE JUROR:  I am a resource room aide at a

13   school in Idaho Falls, and I do not supervise others.  My

14   spouse, he does adult protection.  We have three kids, 11, 7

15   and 3.  I have never been selected as a jury member.  I have a

16   high school education, and I have never studied law.

17             THE COURT:  Thank you.  I think we are to Juror

18   Number 17 now.

19             PROSPECTIVE JUROR:  I am retired.  I did supervise

20   others in a freight forwarding company.  My husband is retired.

21   He worked for General Services Administration.  No children.  I

22   have been on a jury before in 1987 in Boise.  High school

23   education.  Never studied law.

24             THE COURT:  Thank you.

25             PROSPECTIVE JUROR:  I work for Jefferson County Weed

1    Control.  I am an office assistant, applicator operator.  I do
2    supervise others.  My spouse is a transport driver for DePatco.
3    I have one child.  She's 3.  I have not been selected for the
4    jury.  I was in -- high school education.  And I have never
5    studied law.
6              THE COURT:  Go ahead.
7              PROSPECTIVE JUROR:  I am a software engineer.  I do
8    supervise a small team of programmers.  My wife is a
9    stay-at-home mom.  We have four children, ages 11 to 4.  I have
10   never been selected for a jury.  My highest education is a
11   Bachelor's of Science, and I have never studied law.
12             THE COURT:  Thank you.  Juror Number 20.
13             PROSPECTIVE JUROR:  I am a contract specialist for
14   BEA.  My wife is a stay-at-home mom.  I have three kids, 11, 9
15   and 4 and a half.  I have been a member of a jury before in
16   Bonneville District.  It was a criminal case.  I do have a
17   Bachelor's Degree in Business Management.  And I have had a few
18   business law classes.
19             THE COURT:  All right.
20             PROSPECTIVE JUROR:  I am a stay-at-home mom.  My
21   husband's a construction loan officer for Idaho Central.  I
22   have four kids, 3, 7, 8 and 10.  I have never been on a jury
23   before.  My education, I have a Bachelor's Degree in Elementary
24   Education, and I have never studied law.
25             THE COURT:  Juror 22.

1          PROSPECTIVE JUROR:  Thank you.  I am a journeyman

2   plumber for Modern Plumbing and Heating.  I do supervise

3   others.  I am currently engaged right now, and her occupation

4   is a CNA for Visiting Angels.  I do not have any children.  I

5   have not been selected as a jury.  And my education is high

6   school and four years in plumbing, and I have never studied for

7   law.

8          THE COURT:  Thank you.

9          PROSPECTIVE JUROR:  My name is -- correction.

10          THE COURT:  If you want to tell us, that's fine.  I

11   just prefer to keep it all confidential.

12          PROSPECTIVE JUROR:  Something about standing up with

13   a microphone, you have to introduce yourself.  I am a senior

14   manager for a physical therapy company.  I do supervise others.

15   My husband is the Burley Fire Chief.  I do have three children,

16   15, 16 and 18.  I have not ever been a member of the jury.

17   High school education, and I have never studied law.

18          PROSPECTIVE JUROR:  I am a retired retail business

19   owner.  I did supervise others.  I am divorced.  I have one

20   child.  His age is 46, and he is a Fish and Game officer.  I

21   have never been selected as a member of any jury.  And I have

22   never been a juror before.  I have high school education, and I

23   have never studied law.

24          THE COURT:  Thank you.

25          PROSPECTIVE JUROR:  Okay.  So, I am a bank manager.

1    And yes, I do supervise others.  My husband's occupation is he

2    is a sheriff's deputy for Franklin County.  I have five

3    children, 18, 14, two 13-years-olds and a 10-year-old.  I have

4    never been selected as a juror.  My education is a Bachelor's

5    in Business Management, and I have never studied law.

6              THE COURT:  Thank you.

7              PROSPECTIVE JUROR:  I'm retired home maintenance, and

8    my husband is retired military and a heavy equipment operator.

9    I have four children.  They are all adults.  One works for the

10   Post Office, one is a pharmacist, one is at INL, and the other

11   one is auto body repair.  I have never been selected for a jury

12   before.  My education is high school, and I have never studied

13   law.

14             PROSPECTIVE JUROR:  I am a salon owner where I am the

15   only cosmetologist, micropigmentation technician, and I do

16   manicures, and nails, and lash extensions and stuff like that.

17   My husband is a computer designer, image designer, CNC

18   programmer, and he's also going to school full-time for

19   robotics in computer communications engineering.  We have two

20   kids.  They are 11 and 6.

21             I have never been selected for jury duty before.  And

22   then my education is a cosmetology certificate and then also

23   for micropigmentation, I got a certificate in that, and I have

24   never studied law.

25             THE COURT:  Thank you.  Juror Number 28.

1          PROSPECTIVE JUROR:  Say what?

2          THE COURT:  Pass it on down.  There we go.

3          PROSPECTIVE JUROR:  I am a Bank of America associate.

4   I am single.  I don't have any children.  Never been selected

5   as a member.  My education is high school, and I have never

6   studied law.

7          THE COURT:  Thank you.

8          PROSPECTIVE JUROR:  I am a teacher and a coach.  I do

9   supervise others.  My wife is a teacher as well.  We have three

10  children, 14, 12 and 9.  I had been selected on a -- as a juror

11  in municipal court in Geneva, New York.  And it was a criminal

12  case.  I have a Master's Degree in Athletic Administration, and

13  I have not studied law.

14         PROSPECTIVE JUROR:  I am a cook and barback at the

15  First National.  No children.  Single.  High school education.

16  Never been selected.  Never studied law.

17         THE COURT:  Thank you.

18         PROSPECTIVE JUROR:  I am retired.  My former

19  occupation was doing collections for Mountain View Hospital in

20  Idaho Falls.  And I have supervised others as my -- I worked

21  for various collection agencies in Pennsylvania, Florida, and

22  Alabama.  My wife works at Mountain View Hospital in the

23  business office.

24         I have two adult children and three stepchildren.

25  And I want to make the Court aware that my stepson is currently

1    serving in a federal prison in Pennsylvania for breaking and

2    entering and receiving and selling stolen firearms.  I have

3    never served on a jury.  I have a high school education, and I

4    have never studied law.

5              THE COURT:  Thank you.

6              I am going to now ask you a series of questions.  As

7    I said earlier, it's not to pry unnecessarily into your lives,

8    but simply to make sure that we get a fair and impartial jury.

9              I recognize that jury service is probably an

10   inconvenience to each of you, taking you away from your jobs

11   and your families and disrupting your daily routine.  It is,

12   however, one of the most important duties that citizens of this

13   country are called upon to perform.

14             The attorneys estimate that this case will last

15   another three or four days, probably towards the end of the

16   week.  Do any of have you a conflict that cannot be rescheduled

17   or moved that would prevent you from serving on the jury in

18   this case for that length of time?  Juror Number 5.

19             PROSPECTIVE JUROR:  Yeah.  I am a retail store clerk,

20   and I train -- I have, like, 11 employees.  And I was

21   recommended by my boss to make sure that I -- because I can't

22   be replaced.  I make all the decisions for the store.  So, I

23   mean, I can be replaced.  I don't mean it like that.

24             But, anyway, yeah.  My day-to-day duties, if the

25   shifts aren't covered, I have to cover them or make other

1    arrangements.  It would be pretty hard for me.  I would love to

2    go on with this experience, but I don't think that I could make

3    it for four days anyway.

4              THE COURT:  I do understand what you're telling me.

5    The answer right now is no.  I think everybody in here has got

6    the same problem, especially those who are solo employees --

7    employers.  So, I understand your situation, but I can't do

8    anything about it right now.

9              Was there anybody else on the back row?  How about on

10   the middle row?  Mr. Rivera.

11             PROSPECTIVE JUROR:  Well, Your Honor, as you know, I

12   am a Public Defender for Bingham County.  I have multiple

13   hearings and sentencings all scheduled this week.  I can get

14   those rescheduled potentially or have my partner cover them.

15             I do want the let the Court know I have a conflict in

16   that I am a Public Defender with the defense attorney.  We are

17   colleagues and friends.  I would think I would impartial, but

18   for appellate reasons, there might be some issues with alleged

19   bias or conflict.

20             THE COURT:  Would it help if I called Judge Simpson

21   and Judge Colson?

22             PROSPECTIVE JUROR:  Yes, that would be very helpful.

23             THE COURT:  Counsel, I'm going to leave this one up

24   to you, because I do know there is a relationship between the

25   two attorneys here, and that could be a concern on appeal.

1          MS. MCGRADY:  Yes, Your Honor.  I think because of

2     the personal as well as professional relationship, this

3     probably isn't the best jury panel for him.

4          THE COURT:  If I were sitting in your chair, I would

5     say the exact same thing.

6          MS. MCGRADY:  Sure.

7          THE COURT:  Mr. Rivera, as much as I'd love to have

8     you on this panel, I'm going to excuse you for cause.

9          PROSPECTIVE JUROR:  Thank you, Your Honor.  I would

10    actually love to be on it.  It would be fascinating.

11         THE COURT:  Too late.  You gave up your chance.

12         PROSPECTIVE JUROR:  I didn't think I would make it.

13         THE COURT:  Call the next juror.

14         COURTROOM DEPUTY:  Number 32.

15         THE COURT:  Juror Number 32, if you will take his

16    seat.  Why don't you just stop right there, and you can do your

17    little get-to-you-know-you speech.

18         PROSPECTIVE JUROR:  Okay.  My occupation is a

19    property owner/manager and part-time at Town and Country

20    Gardens.  I do not currently supervise others, but I have in

21    previous jobs.  My spouse's occupation is as a nuclear planner.

22    I have four children, 23, 27, 29 and 31.  And they are working

23    at the garden center, a caterer, a model, and a manager for a

24    major communications group in Salt Lake City.

25         I have never been selected as a member of a jury, and

1  my education is some college courses, but I have never studied
2  law.
3  THE COURT:  Thank you.  Would you have answered
4  that -- the one question I've asked so far, would you have
5  answered it "yes"?
6  PROSPECTIVE JUROR:  No.
7  THE COURT:  All right.  Please be seated.
8  Now, there was someone else on that row that raised
9  their hand.  You are Juror Number 12.
10  PROSPECTIVE JUROR:  Your Honor, due to the situation
11  with my house being the only support to my kids, it's hard for
12  me to take any time off at this point in time.  Also, by the
13  end of this week, the company that I work for has a plan for me
14  to travel to Washington State to do some training out there.
15  THE COURT:  Is that going to be by plane or by car?
16  PROSPECTIVE JUROR:  By car.
17  THE COURT:  And will you be the only one going?
18  PROSPECTIVE JUROR:  I suppose.  Yes.
19  THE COURT:  All right.  One thing -- I almost hate to
20  tell people this, because it just sets me up in a minute.  But
21  one of the things I do excuse people for is if they have a
22  planned business trip where the expenses have already been
23  arranged for.  Sounds like you are in that situation.
24  PROSPECTIVE JUROR:  Yes, sir.
25  THE COURT:  Okay.  The fact that you are the sole

1   income provider for your home, I appreciate that, but that's

2   not going to make a difference here.  But the fact that you

3   have a business trip would, but I will give both attorneys an

4   opportunity to question if they would like to.

5           MS. MCGRADY:  When are you scheduled to leave, sir?

6           PROSPECTIVE JUROR:  From what I heard today was

7   planned for me to leave on Thursday or Wednesday late night.

8           MS. MCGRADY:  Okay.  And those -- as the judge

9   mentioned, those expenses have already been paid by your

10  employer?

11          PROSPECTIVE JUROR:  Yes.

12          MS. MCGRADY:  And there's nobody who can go in your

13  stead to do the training?

14          PROSPECTIVE JUROR:  Since I do the research and

15  development, I'm the only person that does it for the company

16  that I work for.

17          MS. MCGRADY:  All right.  Thank you.

18          THE COURT:  And that's not something that can be

19  postponed?  Is it a seminar or is it --

20          PROSPECTIVE JUROR:  No, no.  It's a training on

21  equipment that has to be operated.

22          THE COURT:  All right.  Mr. Murdoch, do you have --

23          MR. MURDOCH:  Your Honor, I have no objection to him

24  being released.

25          THE COURT:  Given the fact that you have that

1    preplanned business trip, I am going to excuse you.

2              PROSPECTIVE JUROR:  Thank you.

3              THE COURT:  All right.  Thank you.  Check in

4    downstairs on your way out.

5              If you will call another juror.

6              COURTROOM DEPUTY:  Juror Number 33.

7              PROSPECTIVE JUROR:  You don't know how much I have

8    always wanted to do this.

9              THE COURT:  If you will stop right there, and take

10   the microphone, and answer those questions.  Do you have them?

11             PROSPECTIVE JUROR:  Let me turn it over.  This has

12   been a drain for me.  Thank you.

13             THE COURT:  We will see how far it gets.

14             PROSPECTIVE JUROR:  Okay.  I want you to know that I

15   am retired.  Before that, I want you to know that I had 35 and

16   a half years at the local telephone company in Las Vegas,

17   Nevada.  My spouse is disabled.  So, I came up to the small

18   town of Moore, Idaho, where we live a very peaceful life.

19             I do have two children.  One is working for Social

20   Security in Louisiana.  Her husband is retired from 24 years in

21   the Air Force.  I am very proud of him.  The other one works

22   for Walgreens in Las Vegas as a manager, so I'm very proud of

23   him, too.

24             My husband has two children, one in Arizona, and one

25   lives with me.  She's mentally ill.  So, we're doing our best

1   to help her.  I was called once in Las Vegas to be on a jury,

2   but I knew someone that was going to be a defendant, so I

3   excused myself.  I didn't get an opportunity.  And my education

4   is a high school.  And I have never studied any law.

5            THE COURT:  All right.  Thank you.  Would you have

6   answered that question with a "yes" or "no" about being able to

7   serve this week?

8            PROSPECTIVE JUROR:  Oh, you bet.

9            THE COURT:  Okay.

10           PROSPECTIVE JUROR:  I can serve as long as you want

11   me.

12           THE COURT:  Have a seat.

13           PROSPECTIVE JUROR:  All right.  Thank you.

14           THE COURT:  I wish more jurors said that.

15           Was there anybody else on that row that raised their

16   hand?  How about on the next row?  There was somebody.  You are

17   Juror Number --

18           PROSPECTIVE JUROR:  18.

19           THE COURT:  18?

20           PROSPECTIVE JUROR:  Yes.  I am -- do you need me to

21   stand?

22           THE COURT:  Either stand or use the microphone.

23           PROSPECTIVE JUROR:  Okay.  Thank you.  So, I am

24   currently just moved out of our house as of yesterday.  We are

25   closing on our home hopefully this week.  I am living in a camp

1  trailer right now.  It's kind of fun.  I just am under a lot of

2  stress, and everything I own is in boxes at the moment.  But if

3  I am needed, I will serve.  I just do have that issue.

4        THE COURT:  If I can ask, what town will you be

5  closing in?

6        PROSPECTIVE JUROR:  Madison County in Archer.

7        THE COURT:  Okay.  I was going to say maybe we can

8  arrange for you to do it on a lunch hour, but you are not going

9  to get there and back on a lunch hour.

10        PROSPECTIVE JUROR:  No, sir.  I am not.

11        THE COURT:  Do you already have it scheduled for the

12  closing?

13        PROSPECTIVE JUROR:  It's kind of in the air.  She is

14  hoping to close this week.  That's all I have.

15        THE COURT:  Well, all I can say, if you want her to

16  call me, I will excuse -- I will give you -- her an excuse for

17  you.

18        PROSPECTIVE JUROR:  Okay.  Thank you.

19        THE COURT:  But that's not a reason I can let you go,

20  unfortunately.

21        PROSPECTIVE JUROR:  That's okay.  Thank you.

22        THE COURT:  All right.  Thank you.

23        Someone else on that row raised their hand.  Juror

24  21.

25        PROSPECTIVE JUROR:  My husband's been in the hospital

1    since Thursday and is actually releasing, like, right now, and

2    I'm supposed to go pick him up whenever we get done here, and

3    he needs care for the next couple of days, so --

4              THE COURT:  Can I ask what's wrong are him?

5              PROSPECTIVE JUROR:  Could I do it privately or --

6              THE COURT:  It's probably not necessary.

7              PROSPECTIVE JUROR:  Okay.

8              THE COURT:  He's been in the hospital since last

9    Thursday?

10             PROSPECTIVE JUROR:  Yeah.

11             THE COURT:  And he's being released today?

12             PROSPECTIVE JUROR:  He's -- yeah.  He actually called

13   me right before we walked up here and said, "Okay.  I'm good to

14   go."

15             THE COURT:  Where is he at?  What hospital?

16             PROSPECTIVE JUROR:  Portneuf.

17             THE COURT:  So he's here in town?

18             PROSPECTIVE JUROR:  It's here in town, yes.

19             THE COURT:  And is it a situation, if you got picked

20   to serve on the jury, would you be his primary healthcare

21   provider for the rest of the week?  Are you supposed to be?

22             PROSPECTIVE JUROR:  No, no.  Do you want me to talk

23   to you privately?  That might be easier.

24             THE COURT:  Okay.  Let's do that.

25             PROSPECTIVE JUROR:  Okay.

1          THE COURT:  But remember what I said about privately?

2          PROSPECTIVE JUROR:  I know.  I'm sorry.

3          THE COURT:  No, I'm just saying, it's not very

4     private.

5          (Sidebar.)

6          PROSPECTIVE JUROR:  My husband is -- sorry.

7          THE COURT:  Okay.  Now we are going to talk right in

8     that so the court reporter can hear you.

9          PROSPECTIVE JUROR:  My husband is --

10          THE COURT:  Talk louder.

11          PROSPECTIVE JUROR:  Sorry.  I don't know how to talk.

12     My husband is on the behavior floor.  He's been suicidal, so I

13     don't have to be there, but he needs somebody.

14          THE COURT:  What happens if you are not there?

15          PROSPECTIVE JUROR:  He's in charge of our children,

16     which is kind of scary at the moment, and he's by himself.  I

17     have just been advised to have someone with him the next couple

18     days.

19          THE COURT:  Counsel, do you have any questions?

20          MR. MURDOCH:  I don't have any questions or any

21     objection.

22          MS. MCGRADY:  No.

23          THE COURT:  I think, given your explanation, I am

24     going to excuse you, but I have to do that on the record when

25     you go back there.

1           PROSPECTIVE JUROR:  Thank you.

2       (End of sidebar.)

3           THE COURT:  I should tell all of you before we go any

4   further, everything that is said and the reason the microphone

5   is so important is Kathy is typing down every word that's said

6   in court.  And in order for her to hear you, we need to use

7   that microphone.

8           Even when we are at the sidebar, that little

9   microphone over there, she can hear you with her headphones.

10          Now, having had the discussion at the sidebar, yours

11  is a case that I will excuse you.

12          PROSPECTIVE JUROR:  Thank you.

13          THE COURT:  Tell your husband good luck.

14          PROSPECTIVE JUROR:  Thank you.

15          THE COURT:  And you are free to go.  If you'll check

16  in downstairs.

17          Call the next juror.

18          COURTROOM DEPUTY:  Juror 34.

19          THE COURT:  I don't even know where the microphone

20  ended up.

21          PROSPECTIVE JUROR:  I'm a union ironworker.  Geez.

22          THE COURT:  Step back a step.  Now try it.

23          PROSPECTIVE JUROR:  I'm a union ironworker.

24          THE COURT:  Must be that metal chain you're wearing.

25          PROSPECTIVE JUROR:  I don't have a spouse.  I have a

1   fiancé.  We -- we have -- I have two kids and she has two kids,

2   10, 11, 9 and 5.  Never been selected as a juror.  I got a high

3   school education plus a certificate in welding.  And I have

4   never studied law.

5           THE COURT:  All right.  And would you have answered

6   the question with a "yes"?

7           PROSPECTIVE JUROR:  No.

8           THE COURT:  All right.  Go ahead and have a seat.

9           Was there anyone else on that row that would have

10  answered or that did answer "yes"?  No response.  Whoop.

11          PROSPECTIVE JUROR:  Sorry.

12          THE COURT:  Tell me your juror number.

13          PROSPECTIVE JUROR:  16.

14          THE COURT:  16.

15          PROSPECTIVE JUROR:  My husband has an all-day

16  training event on Thursday, and the daycare that we take our

17  child to is associated with his work, and so those employees

18  will also be at that training.  And so I won't have anybody

19  that can watch my child that day.

20          THE COURT:  Do you have family that could do it?

21          PROSPECTIVE JUROR:  I have a 76-year-old

22  mother-in-law.

23          THE COURT:  And will your children be in school for

24  part of the day?

25          PROSPECTIVE JUROR:  My older two, yes.

1             THE COURT:  But you'll have some at home?

2             PROSPECTIVE JUROR:  My 11-year-old could watch my

3    7-year-old for a couple hours after school gets out at 3:00.

4             THE COURT:  And I apologize.  How many children are

5    there?

6             PROSPECTIVE JUROR:  Three.

7             THE COURT:  Three.

8             PROSPECTIVE JUROR:  The three-year-old is -- the

9    youngest one is in daycare.

10            THE COURT:  And he is the one you are worried about

11   or she?

12            PROSPECTIVE JUROR:  He.  Yeah.

13            THE COURT:  Okay.  We are going to have to see where

14   this goes --

15            PROSPECTIVE JUROR:  Sure.

16            THE COURT:  -- and how many jurors I lose --

17            PROSPECTIVE JUROR:  That's fine.

18            THE COURT:  -- because that's not a valid reason for

19   me to excuse you --

20            PROSPECTIVE JUROR:  Sure.

21            THE COURT:  -- but I do understand.

22            PROSPECTIVE JUROR:  Okay.

23            THE COURT:  Was there anybody on the front row who

24   would have raised their hand?  Your number?

25            PROSPECTIVE JUROR:  28.

1            THE COURT:  28.

2            PROSPECTIVE JUROR:  My grandma has passed away on the

3    2nd, and I actually am supposed to be getting on a plane in the

4    morning to go to Seattle to see family.

5            THE COURT:  Is she having a funeral or a celebration

6    of life?

7            PROSPECTIVE JUROR:  Celebration of life.

8            THE COURT:  All right.  You've already bought your

9    plane tickets?

10           PROSPECTIVE JUROR:  Yeah.

11           THE COURT:  Okay.  Counsel, do either of you want to

12   ask any questions?

13           MS. MCGRADY:  No questions, Your Honor.

14           MR. MURDOCH:  No, Your Honor.

15           THE COURT:  Bereavement such as that, particularly

16   with a plane ticket involved is a reason I can excuse people.

17   So, I will excuse you and my condolences to you.

18           PROSPECTIVE JUROR:  Thank you.

19           THE COURT:  You will learn, as we go through the day,

20   that I get tougher and tougher on excusing people as the crowd

21   dwindles out there.  So, just be aware of that.

22           COURTROOM DEPUTY:  Juror 35.

23           PROSPECTIVE JUROR:  I am currently a bank teller.  I

24   do not supervise anyone.  No spouse.  No children.  I have

25   never been selected to be a juror before.  My education is some

1   college, and I have never studied law.

2            THE COURT:  And would you have answered the question

3   with a "yes" or "no"?

4            PROSPECTIVE JUROR:  No.

5            THE COURT:  Thank you.  Please be seated.

6            Gentleman, would any of the three of you, did you

7   raise your hand?

8            All right.  Is there any member of the panel who has

9   any special disability or problem that would make serving as a

10  member of this jury difficult or impossible?

11           No response.

12           Do any of you have a problem seeing or hearing that

13  may prevent you from understanding the testimony or observing

14  the evidence?

15           No response.

16           Do any of you have any difficulty understanding the

17  English language?

18           No response.

19           I am going to have the lawyers introduce themselves,

20  state who they work for and introduce the people sitting at

21  their table.  We'll start with the government.

22           MS. MCGRADY:  Good afternoon, everybody.  My name is

23  Kassandra McGrady, and I'm one of the lawyers representing the

24  United States in this case.  This is my cocounsel, John Shirts,

25  also with the US Attorney's Office.  This is Special Agent Kris

1    Knight with Homeland Security Investigations, and he is the

2    case agent.

3           THE COURT:  Now, do any of you know the counsel for

4    the government on either a social or professional basis?  Do

5    any of you know Mr. Knight?

6           No response.

7           Mr. Murdoch, if you will do the same thing.

8           MR. MURDOCH:  Thank you, Your Honor.

9           Good afternoon, everybody.  My name is Manuel

10   Murdoch.  I am the attorney for the defense.  This is Lex

11   Goodwin, the defendant in the case.  Go ahead and stand up.

12   Thank you.

13          THE COURT:  And I don't remember.  Do you have any

14   partners with you now?

15          MR. MURDOCH:  I do not.  I am a sole practitioner.

16          THE COURT:  Okay.  Do any of you know either

17   Mr. Murdoch or his client?  You are juror number?

18          PROSPECTIVE JUROR:  29.

19          THE COURT:  And who do you know?

20          PROSPECTIVE JUROR:  I know Mr. Murdoch.

21          THE COURT:  All right.  And do you know him in a

22   social or professional situation?

23          PROSPECTIVE JUROR:  On a social.  We used to live

24   about a block away until I moved away about two years ago.

25          THE COURT:  Did you move because of him?

1          PROSPECTIVE JUROR:  No, I did not.

2          THE COURT:  Okay.  Is there anything about that

3   social relationship that would make it difficult for you to be

4   fair and impartial in this case?

5          PROSPECTIVE JUROR:  No, there is not.

6          THE COURT:  Okay.  Thank you.

7          Are any of you related to the defendant by blood or

8   by marriage?

9          No response.

10          Does the relationship of debtor or creditor exist

11   between any of you and Mr. Goodwin?

12          No response.

13          Have any of you ever been involved in litigation with

14   the defendant?

15          No response.

16          Have any of you ever been complained against by the

17   defendant or been accused by him in a criminal prosecution?

18          No response.

19          Have any of you ever been involved in an employment

20   relationship with the defendant?

21          Do any of have you a business relationship with him?

22          Do any of you sitting here right now have any bias or

23   prejudice for or against the defendant?

24          No response.

25          Are any of you even acquainted with the defendant?

1    Do you even know who he is?

2              No response.

3              How about with any member of his family?

4              The case being tried today is a criminal case, as I

5    mentioned at the outset.  The defendant in this matter has been

6    charged with four counts of sexual exploitation of a minor

7    child, one count of an attempted sexual exploitation of a minor

8    child, and one count transportation of child pornography, and

9    one count possession of child pornography.

10             Do any of you believe that because and only because

11   the defendant has been charged with these offenses he is

12   guilty?

13             All right.  You are number?

14             PROSPECTIVE JUROR: 13.

15             THE COURT:  All right.  The question was, do you

16   believe, just because he's been charged, he must be guilty?

17             PROSPECTIVE JUROR: Oh, okay.  Sorry.  No, no, no.

18             THE COURT:  Okay.  So, could you sit through this

19   trial, listen to the evidence that's presented, and make up

20   your mind based on that evidence without any preconceptions of

21   guilt or innocence?

22             PROSPECTIVE JUROR: Of him?

23             THE COURT:  Of him.

24             PROSPECTIVE JUROR: It -- it could be very hard.  I

25   have had --

1          THE COURT:  Let me just interrupt you.  If it has to

2    do with something in your past, victim or abuse situation, we

3    will get to that.

4          PROSPECTIVE JUROR:  Okay.  And that's what it would

5    be.

6          THE COURT:  Okay.  But just looking at him, you don't

7    know him; right?

8          PROSPECTIVE JUROR:  I don't know him at all.

9          THE COURT:  And just because he's been charged by the

10   government, do you think he's guilty automatically?

11         PROSPECTIVE JUROR:  Not without any evidence or

12   anything, no.

13         THE COURT:  That's what I'm looking for with this

14   question.

15         PROSPECTIVE JUROR:  Okay.  I apologize.

16         THE COURT:  So, you are okay with this one?

17         PROSPECTIVE JUROR:  Yes.

18         THE COURT:  All right.  Thank you.  Now, is there

19   someone else who raised her hand?

20         PROSPECTIVE JUROR:  (Juror 20)  I did, but

21   understanding the question better, I'm good.

22         THE COURT:  Okay.  Have any of you acquired any

23   information about this case or either party from the news media

24   or from any other source?

25         No response.

1        Have any of you already formed an opinion or belief

2   as to the merits of this action -- this is a lot like that last

3   question -- that is whether the defendant is guilty or not

4   guilty of the offenses charged?  Your number?

5        20.  All right.  So, you've already formed an opinion

6   about guilt or innocence in this case.

7        PROSPECTIVE JUROR:  (Nods head.)

8        THE COURT:  Even though you haven't heard any of the

9   testimony yet?

10       PROSPECTIVE JUROR:  Yeah.  So, my oldest brother was

11  molested by an adult.  So, I think I would be very biased no

12  matter what the evidence was.

13       THE COURT:  Have you ever had a family member who was

14  accused of molesting somebody?

15       PROSPECTIVE JUROR:  No.

16       THE COURT:  Do you understand their right to a jury

17  trial and to have the jury hear the evidence before they make a

18  decision?

19       PROSPECTIVE JUROR:  I do.

20       THE COURT:  But you don't think you could do that in

21  this case?

22       PROSPECTIVE JUROR:  I think I would be very biased in

23  my opinion, even after hearing the evidence.

24       THE COURT:  All right.  Counsel, do either of you

25  wish to ask questions?

1          MS. MCGRADY:  So, sir, having done a number of these

2     trials, this is a very common response, because when you hear

3     what this case is about, it will evoke an emotional reaction in

4     a lot of people, especially if you have personal experiences

5     like you're saying.

6          PROSPECTIVE JUROR:  Uh-huh.

7          MS. MCGRADY:  Your role in this case is going to be

8     very, very limited to just what are we presenting to you and

9     how we've proven this case.  You would just be a fact finder on

10    what happened in this particular situation.

11         Do you think you would be able to compartmentalize

12    what happened in the past and fulfill that role, or do you feel

13    like that's not something you could possibly do?

14         PROSPECTIVE JUROR:  I would try my best.  I mean, I

15    would hope I could be impartial, but --

16         MS. MCGRADY:  Sure.  And so in your everyday life,

17    I'm sure that you have to put feelings aside that come up and

18    kind of focus on the task at hand.  That's something that we

19    do.

20         Do you feel like that's something that you do could

21    do, recognizing that we all just need -- we need a jury in this

22    case, and we need somebody to be fair to both sides.

23         PROSPECTIVE JUROR:  I would try my best, yeah.

24         MS. MCGRADY:  Okay.

25         THE COURT:  Counsel.

1              MR. MURDOCH:  Thank you, Your Honor.  Juror Number

2    20, correct?

3              PROSPECTIVE JUROR:  20, yes.

4              MR. MURDOCH:  Okay.  Let me ask you this question.

5    If you were sitting where my client is, would you want you

6    sitting as a juror?

7              PROSPECTIVE JUROR:  Probably not.

8              MR. MURDOCH:  Why is that?

9              PROSPECTIVE JUROR:  I wouldn't want somebody that's

10   already formulated an opinion or is biased against what I would

11   or wouldn't -- would or maybe wouldn't have done.

12             MR. MURDOCH:  But you have formed an opinion?

13             PROSPECTIVE JUROR:  To a point, yes.

14             MR. MURDOCH:  What is that opinion?

15             PROSPECTIVE JUROR:  That probably he's guilty if he's

16   taken advantage of a minor, for one.  And then the molestation

17   case, with -- like I said, with my oldest brother being

18   molested.

19             MR. MURDOCH:  And as you listen to the evidence

20   during the case, do you believe that you would be able to set

21   that opinion aside?

22             PROSPECTIVE JUROR:  I would try my best, yeah.

23             MR. MURDOCH:  I understand you would try, but do you

24   believe you are capable of doing that?

25             PROSPECTIVE JUROR:  I -- I don't know.  That's a good

1  question.

2        MR. MURDOCH:  Okay.  I don't have any other

3  questions, Your Honor.

4        THE COURT:  All right.  Sir, do you understand that

5  at this point in time, you have heard absolutely no facts about

6  this case.  All you have heard is the charge.

7        PROSPECTIVE JUROR:  Yes.

8        THE COURT:  And that charge alone makes you think

9  he's guilty?

10        PROSPECTIVE JUROR:  Yeah.

11        THE COURT:  You are not aware of situations where

12  people are charged and then acquitted?

13        PROSPECTIVE JUROR:  I have heard of those situations,

14  but, like I said, I feel I'd be very biased against no matter

15  what the evidence is presented.

16        THE COURT:  Okay.  I thought you told Ms. McGrady

17  that you could be fair and impartial, but you're telling me no.

18        PROSPECTIVE JUROR:  I would try my best for sure,

19  yes.

20        THE COURT:  All right.  The importance here is that

21  the scales of justice, before we even start the trial, have to

22  be evenly balanced.  They can't be tipped one way or the other.

23  And what you are telling me is it would be hard for you not to

24  have that scale tipped from the outset.

25        PROSPECTIVE JUROR:  Yes.

1          THE COURT:  Counsel, I'm going to excuse him for

2    cause.

3          MS. MCGRADY:  Thank you, Your Honor.

4          MR. MURDOCH:  Thank you.

5          THE COURT:  We will find a different trial for you to

6    sit on.

7          PROSPECTIVE JUROR:  Okay.

8          THE COURT:  If you will call the next juror.

9          COURTROOM DEPUTY:  Juror 36.

10         PROSPECTIVE JUROR:  My occupation is research.  I

11   supervise undergraduate students.  I am not married.  I don't

12   have children.  I have been on a jury.  It was the Bannock

13   County Court.  I have a Bachelor of Science, and I have never

14   studied law.

15         THE COURT:  Was the jury you were on, was it criminal

16   or civil?

17         PROSPECTIVE JUROR:  It was criminal.

18         THE COURT:  All right.  Would you have answered "yes"

19   to any of the questions I have asked so far?

20         PROSPECTIVE JUROR:  No.

21         THE COURT:  All right.  Please have a seat.

22         PROSPECTIVE JUROR:  Thanks.

23         THE COURT:  Was there anybody else?  Juror number --

24         PROSPECTIVE JUROR:  34.

25         THE COURT:  34.

1          PROSPECTIVE JUROR:  My concern is a lot like this

2     other juror's, but mine is more closer to my family.  My -- my

3     uncle was convicted of a crime like that, and he served 20

4     years.  And the pain and anguish that he caused our family is

5     still re- -- going through the family.  We are not over it.

6          And I feel that in a case like this, every time I

7     look at him, I'm going to think of all the pain and the hurt

8     that my family went through.  So, I -- I find it very difficult

9     to be unbiased.  I -- I realize that he's just being charged,

10    and he might not be guilty, but I feel that just the nature of

11    the -- the Court will bring up all the -- all the memories I

12    have had of growing up and having to deal with all the things.

13    The ridicule from the -- my small town, and I feel I'm going to

14    bring up all them emotions every time something like that comes

15    up.

16          THE COURT:  And I do appreciate that, and what I'm

17    hearing you tell me is not only would you bring it up, but you

18    would focus it against Mr. Goodwin; is that correct?

19          PROSPECTIVE JUROR:  I feel that I would, and it's not

20    fair to him.

21          THE COURT:  Again, that's why we go through this

22    process.

23          Counsel, do you want to ask him any questions?

24          MS. MCGRADY:  No, Your Honor.  Thank you.

25          THE COURT:  Counsel.

1          MR. MURDOCH:  No, Your Honor.

2          THE COURT:  Given the circumstances, I'm going to

3    excuse you.

4          MS. MCGRADY:  Thank you.

5          THE COURT:  If you will call the next juror.

6          COURTROOM DEPUTY:  Juror 37.

7          PROSPECTIVE JUROR:  My occupation is a knife maker

8    and I am also self-employed as a knife sharpener.  My wife is

9    an accountant.  I have two children, 17 and 12.  I have never

10   been on a jury.  High school education, and I have never

11   studied law.

12         THE COURT:  All right.  Would you have answered "yes"

13   to any of the questions I have asked thus far?

14         PROSPECTIVE JUROR:  No.

15         THE COURT:  Please have a seat.  Was there anyone

16   else on that row that answered "yes" to the question?

17         How about on the front row?

18         Okay.  In this case, the jury may be exposed to

19   explicit language and sexually explicit photographs and videos

20   of minors.  I understand this may be difficult for you to hear

21   or see.  The lawyers and the Court will do our best to limit

22   your exposure to that type of material.  But due to the nature

23   of the case, some exposure is going to be necessary.

24         It is important that you be able to set aside any

25   personal feelings you may have about the material and fairly

1  consider the evidence to decide whether this defendant is

2  guilty of any of the charges.

3         Will the mere subject matter of this case affect your

4  ability to listen and later fairly discuss the evidence with

5  other jurors?

6         No response.

7         I am going to now ask counsel for each party to

8  identify all witnesses who may testify during this case.  Once

9  they have done that, I am going to ask you if you know any of

10  those witnesses.

11         Go ahead, counsel.

12         MS. MCGRADY:  Karisa Tingey, Melissa Daves, Patrick

13  Daves, Tia Leap.  Her married name is Tia Cane.  Chris Pyryt,

14  Tim Underwood, Cliff Cummings, Mark Dalton, Travis Zabroski,

15  Brad Thrall, Chris Cutler, Erick Akers, Brad Roedel, Kris

16  Knight, Addison Jacobs.

17         THE COURT:  Do any of you recognize any of those

18  names?  Juror Number 3.

19         PROSPECTIVE JUROR:  Could she repeat the first name?

20         THE COURT:  The very first name?

21         PROSPECTIVE JUROR:  Um-hum.

22         MS. MCGRADY:  Karisa Tingey.

23         PROSPECTIVE JUROR:  Is she married now?

24         MS. MCGRADY:  She is not married.

25         PROSPECTIVE JUROR:  Okay.  Then no.  Okay.

```
1              THE COURT:  We are good?

2              PROSPECTIVE JUROR:  Yeah.

3              THE COURT:  Okay.  Often in a case, the defense's

4   witnesses are the same witnesses.  But Mr. Murdoch, I'm going

5   to ask you if you have any witnesses you may call that are

6   different from what she identified if you will let us know.

7              MR. MURDOCH:  We do not, Your Honor.

8              THE COURT:  Okay.  Now, I'm going to ask you a series

9   of questions.  Please wait until I have asked all of them and

10  then I'll ask you to raise your hand if you would have answered

11  any one of them with a "yes."

12             Have any of you ever been charged with or convicted

13  of a felony offense?

14             Have any of you ever had a family member or close

15  friend who was charged with or convicted of a felony offense?

16             Have any of you ever been the victim of sexual abuse

17  or had a close family member who was a victim of sexual abuse?

18             Do any of you belong to an organization that's

19  primary focus is to protect sexual abuse victims?

20             Now, if you would have answered any one of those

21  questions with a "yes," please raise your hand.

22             That's what I thought.  Juror Number 1, do you want

23  to discuss it privately?  It's -- your occupation is obviously

24  one of them.

25             PROSPECTIVE JUROR:  Occupation is one of them.  And
```

1    then I have had a child that was sexually abused, and then a

2    family member that was charged of sexually abusing somebody.

3    Occupationally, we do forensic interviews at our office, so I

4    see a lot of --

5              THE COURT:  Of children.

6              PROSPECTIVE JUROR:  Yes.  Yes.

7              THE COURT:  Counsel, I don't see how she's going to

8    sit on this jury.

9              MR. MURDOCH:  I don't have any objection to her being

10   excused.

11             MS. MCGRADY:  Judge, I appreciate, but the nature of

12   her occupation would certainly indicate that, but perhaps some

13   further questioning on if she feels --

14             THE COURT:  You are welcome --

15             MS. MCGRADY:  -- her occupation --

16             THE COURT:  You're welcome to do that.

17             MS. MCGRADY:  Thank you.  All right.  So, you work

18   around children who are forensically abused about various types

19   of abuse and neglect, I'm assuming?

20             PROSPECTIVE JUROR:  Yes.

21             MS. MCGRADY:  And you do that every day?

22             PROSPECTIVE JUROR:  We do.

23             MS. MCGRADY:  So, you do it in a professional

24   capacity.

25             PROSPECTIVE JUROR:  Correct.

1              MS. MCGRADY:  Okay.  So, do you feel that having that

2      background is going to impact your ability to sit on this trial

3      and be fair and impartial, or do you feel like you can put that

4      aside and listen to the evidence in this case?

5              PROSPECTIVE JUROR:  I think I can listen to the

6      evidence.  My concern would be if it's one of my staff that had

7      actually done the forensic interview on this case, then I can't

8      answer that because I don't know for sure.

9              MS. MCGRADY:  Sure.  So, did you recognize anybody on

10     the witness list?

11             PROSPECTIVE JUROR:  I didn't recognize anybody that I

12     know off the top of my head, but we have over 300 children

13     coming through our center in a year.  So, to be able to just

14     tell you without --

15             THE COURT:  I think what she's saying is the forensic

16     interviewer would have been on that list.

17             MS. MCGRADY:  Correct.

18             PROSPECTIVE JUROR:  Okay.

19             MS. MCGRADY:  And you didn't recognize anybody on the

20     witness list?

21             PROSPECTIVE JUROR:  No.

22             MS. MCGRADY:  Okay.

23             PROSPECTIVE JUROR:  No.

24             MS. MCGRADY:  So, that means is your occupation going

25     to influence your ability to be fair and impartial?

1    PROSPECTIVE JUROR: Well, the other thing I will tell

2  you that I do is I'm currently sitting on a panel where I

3  review cases for Child Protection Services for children who

4  have been in foster care for over two years, and a lot of them

5  have a similar history.

6    So, I want to say I can, and I believe I can, but I

7  guess it just all needs to be out there. You just need to

8  understand my world, and that I work closely with law

9  enforcement, prosecution, the whole gamut all the way across

10  the board.

11    MS. MCGRADY: Sure. And we've had police officers

12  sit on juries and judges sit on juries and lawyers. It's just

13  all about whether or not you feel that your personal, everyday

14  life can be set aside, and you just focus on if the

15  government's able to prove the case.

16    PROSPECTIVE JUROR: Okay.

17    MS. MCGRADY: Do you feel you can do that?

18    PROSPECTIVE JUROR: I think I can do that.

19    MS. MCGRADY: Okay.

20    THE COURT: Now, she only focused on the first

21  question. Were there others you would have answered "yes" to

22  in that group?

23    PROSPECTIVE JUROR: I think it's fine.

24    THE COURT: You think you're okay?

25    PROSPECTIVE JUROR: Yeah.

1          THE COURT:  All right.

2          PROSPECTIVE JUROR:  I am good.

3          THE COURT:  And who else on the back row raised their

4    hand?  Juror Number 3, do you want to talk about it privately

5    or are you okay?

6          PROSPECTIVE JUROR:  I'm fine.  I'm just wanted to be

7    open and honest that I do work with little children most every

8    day.  I don't think that I could be -- I mean, I do believe

9    that I could be impartial to that.  Also, my -- did you ask

10   about family members that have been charged with things?

11         THE COURT:  I did.

12         MS. MCGRADY:  I just have a younger brother that is

13   on probation right now.  I don't know if that would make a

14   difference, but --

15         THE COURT:  Probation for a felony offense?

16         PROSPECTIVE JUROR:  No.

17         THE COURT:  Misdemeanor?

18         PROSPECTIVE JUROR:  Yes.

19         THE COURT:  All right.  That I didn't ask about, so

20   you are okay.

21         PROSPECTIVE JUROR:  Okay.

22         PROSPECTIVE JUROR:  Juror Number 4.

23         THE COURT:  All right.

24         PROSPECTIVE JUROR:  I was molested once by an uncle

25   when I was three, four, something like that.  It's a long time

1  ago, but I am pretty fair and impartial about it at this time.

2  It's been a lot of water under the bridge per se.

3          THE COURT:  So, you think you'll be okay?

4          PROSPECTIVE JUROR:  Oh, yeah.

5          THE COURT:  All right.  I appreciate your openness.

6          PROSPECTIVE JUROR:  Yep.

7          PROSPECTIVE JUROR:  (Juror Number 6)  I just had a

8  question if our relationship is --

9          THE COURT:  Mine and yours?

10          PROSPECTIVE JUROR:  Yes.

11          THE COURT:  No.

12          PROSPECTIVE JUROR:  Okay.

13          THE COURT:  I'm not the fact finder.  You are.  As

14  long as you can sit on the jury and not be influenced by

15  anything I say or do, then we're okay.

16          PROSPECTIVE JUROR:  (Juror Number 7)  I was molested.

17  To be honest, it kind of is hard.  I had a little bit of cringe

18  when I heard --

19          THE COURT:  Do you prefer to speak about this

20  privately?

21          PROSPECTIVE JUROR:  It depends on how deep into it

22  you're going to get.

23          THE COURT:  Well, let me ask, and if you want to

24  speak privately at any time, you tell me.

25          PROSPECTIVE JUROR:  Sure.

1          THE COURT:  How old were you?

2          PROSPECTIVE JUROR:  I was 15.

3          THE COURT:  15?

4          PROSPECTIVE JUROR:  Uh-huh.

5          THE COURT:  Was it a family member?

6          PROSPECTIVE JUROR:  No.

7          THE COURT:  So, a friend of the family?

8          PROSPECTIVE JUROR:  No.  Just -- is that -- was this

9  the question, it had to be family?

10          THE COURT:  No.

11          PROSPECTIVE JUROR:  Oh, okay.  No.  It was not

12  family.

13          THE COURT:  All that question asked was have you been

14  abused.

15          PROSPECTIVE JUROR:  Yeah.

16          THE COURT:  Do you think that's something you can set

17  aside and weigh this case on the facts that are presented here

18  in the courtroom?

19          PROSPECTIVE JUROR:  I would like to say I could, but

20  like I said, I honest -- like, I had a cringe as soon as I

21  heard what the case may be.  So, I don't know.

22          THE COURT:  The nature of the case, I think, gives

23  everybody a cringe.

24          PROSPECTIVE JUROR:  Right.

25          THE COURT:  But I also understand why it would give

1  you more of a cringe, and that's what we are trying to make

2  sure here, is that do you feel like you would be in a situation

3  where no matter what, you are going to find him guilty?

4           PROSPECTIVE JUROR:  I mean, it's possible, because

5  depends on, you know, the evidence and stuff.  It would

6  probably sway me, yeah.

7           THE COURT:  Well, I don't mean to pick at things

8  here, but if you are making your decision based on the

9  evidence, that's fine.

10          PROSPECTIVE JUROR:  Right.

11          THE COURT:  That's permissible.  That's what we're

12  looking for.

13          PROSPECTIVE JUROR:  Okay.

14          THE COURT:  If you're making your finding based

15  solely on the fact that you have been abused -- or not even

16  solely.  If that comes into your consideration, then we

17  probably ought to find you a different jury to sit on.

18          PROSPECTIVE JUROR:  Yeah.  I mean --

19          THE COURT:  So, do you think --

20          PROSPECTIVE JUROR:  It makes me nervous that I

21  would -- yeah, that I would definitely be --

22          THE COURT:  Not be fair and impartial?

23          PROSPECTIVE JUROR:  Yeah.  Yeah.  Not fair.

24          THE COURT:  Counsel, do you want to ask her any

25  questions?

1            MS. MCGRADY:  No, Your Honor.  Thank you.

2            THE COURT:  Counsel?

3            MR. MURDOCH:  No, Your Honor.

4            THE COURT:  Given your history, again, thank you for

5    your honesty.  I think I am going to excuse you, and we will

6    have you sit on a different jury some other time.

7            PROSPECTIVE JUROR:  Okay.  Thank you.

8            THE COURT:  If you will call the next juror.

9            COURTROOM DEPUTY:  Juror 38.

10           PROSPECTIVE JUROR:  My occupation is software

11   engineer.  My spouse is a stay-at-home mom.  I have three

12   children, 6, 4 and 1.  I have never been selected on a jury.  A

13   college education, Bachelor of Computer Engineering.  I have

14   never studied law.

15           THE COURT:  Would you have answered "yes" to any of

16   the questions?

17           PROSPECTIVE JUROR:  No.

18           THE COURT:  Thank you.  Have a seat.

19           Now, is that everybody on the back row?

20           On the middle row.

21           PROSPECTIVE JUROR:  I want to speak to you privately.

22           THE COURT:  Before I get to you, there is one other

23   in front of you.  What is your juror number?

24           PROSPECTIVE JUROR:  11.

25           THE COURT:  11.

1                PROSPECTIVE JUROR:  My husband was convicted of a

2    felony.

3                THE COURT:  How long ago?

4                PROSPECTIVE JUROR:  Years ago, 15.

5                THE COURT:  In Idaho?

6                PROSPECTIVE JUROR:  In Idaho.

7                THE COURT:  Is he still on probation or parole?

8                PROSPECTIVE JUROR:  No.

9                THE COURT:  Is there anything about that situation --

10   were you married to him at the time?

11               PROSPECTIVE JUROR:  No.

12               THE COURT:  Was there anything about that situation

13   that would make it difficult for you to be fair and impartial

14   here?

15               PROSPECTIVE JUROR:  I don't believe so.

16               THE COURT:  Okay.  Now, ma'am, you wanted to speak

17   privately.

18               PROSPECTIVE JUROR:  (Juror Number 33)  Yes.

19               THE COURT:  All right.  Come on over here.

20        (Sidebar.)

21               PROSPECTIVE JUROR:  You know, the information that

22   you fill out, I did.  My husband has a felony, but I wasn't

23   married to him at the time, but it was a 1985.  And he was

24   railroaded.  So, I feel I -- this kid could have been

25   railroaded.  I'm telling you right now, because he was.  They

1  got him for a sex offense, too, but he didn't do it.

2          THE COURT:  Okay.

3          PROSPECTIVE JUROR:  Okay?  So, I know that I can be.

4  And he has a clear -- if you look at him over these 11 years,

5  and we are perfect citizens.  Okay?

6          THE COURT:  That experience, is that going to make it

7  difficult for you to be fair and impartial to either side here?

8          PROSPECTIVE JUROR:  No.  But I'm just telling you, I

9  can look at him --

10         THE COURT:  You can set that aside?

11         PROSPECTIVE JUROR:  Yes, I can set that.  I told you

12 that my husband's daughter lives with me.  She is mentally ill

13 because her stepfather molested her, too.  And so I feel sorry

14 for her.  So, I have been surrounded by it.  But I -- I can be

15 partial and listen to all the evidence, because I know what

16 it's like to be on that side and this side.  Okay?

17         And that's all I want you guys to know, because if

18 you would have read the information that I filled out, you

19 would have known that, and I thought sure you wouldn't even

20 call me, once you read that he was a felon.  And me, I'm

21 squeaky clean.

22         THE COURT:  That doesn't affect you.

23         PROSPECTIVE JUROR:  Yeah.

24         THE COURT:  He would have had a difficult time, but

25 you could sit.

1           Do you have any questions you want to ask her?

2           PROSPECTIVE JUROR:  Because like I said --

3           MR. MURDOCH:  No, Your Honor.

4           PROSPECTIVE JUROR:  -- if you guys looked up me, I

5    have never been in a police department.  I have never missed a

6    day of school.  I'm squeaky clean.  Never smoked, drank, took

7    drugs.  And this is something I have wanted to do all my life.

8    So, for you guys to give me that opportunity, I just want to

9    say thank you.  Okay?  Thank you.

10          THE COURT:  We are good.

11          PROSPECTIVE JUROR:  Okay.  Thank you.

12          THE COURT:  Thank you.

13      (End of sidebar.)

14          THE COURT:  Was there anyone else in that row who

15   said "yes"?

16          Juror Number 13, this is what you were talking about

17   earlier; right?

18          PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Are you comfortable talking about it up

20   here?

21          PROSPECTIVE JUROR:  Yes, I am.  Yeah.  There -- there

22   was a few cases when I was a child that I was sexually

23   assaulted.  I had -- after all the hearings and fact had been

24   asked by his therapist, after he got back from treatment, and I

25   was able to be in the same room and talk and discuss stuff.

1    And my mother had lived in the same trailer court as him for 30

2    years, and I was comfortable enough to walk past his house to

3    my uncle's house.  So, given that circumstance and stuff and

4    evidence, I think I would be fine to listen to the evidence.

5              THE COURT:  Okay.  I appreciate your openness with

6    us.

7              You are Juror Number 16.

8              PROSPECTIVE JUROR:  I was molested by my stepdad at

9    15 years old.

10             THE COURT:  All right.  And is that something that's

11   going to make it difficult for you to be fair and impartial

12   here?

13             PROSPECTIVE JUROR:  I think I could be fair.  I just

14   don't know if I -- if I would -- I would probably be a little

15   emotional hearing certain things, but --

16             THE COURT:  I don't know what to do with that.  There

17   are opportunities -- if you were on this jury and you did

18   become emotional, there are opportunities for us to provide you

19   with counseling.  Are you in counseling now?

20             PROSPECTIVE JUROR:  I've had counseling, yes.

21             THE COURT:  Okay.  If it was a situation where you

22   had to go back, we could help you with that.  But if you think

23   it's too emotional or that you won't be able to be fair and

24   impartial, I need to know that.

25             PROSPECTIVE JUROR:  I think I could be fair.  Like I

1  said, there might be some tears.  I don't know.  But, I mean,
2  just --
3            THE COURT:  Tears are a part of life.  I don't have a
4  problem with that.
5            PROSPECTIVE JUROR:  Yeah, I just didn't know if --
6  okay.
7            THE COURT:  That would be more than fine.  And if you
8  needed a recess at any time, we could certainly take a break.
9            PROSPECTIVE JUROR:  Okay.
10           THE COURT:  Okay.  Counsel, do either of you want to
11 ask her a follow-up questions on that?
12           MS. MCGRADY:  No, Your Honor.  Thank you.
13           MR. MURDOCH:  No, Your Honor.
14           THE COURT:  All right.  Was there anybody on the next
15 row?
16           All the way down at the end.  What's your number?
17           PROSPECTIVE JUROR:  17.
18           THE COURT:  17.
19           PROSPECTIVE JUROR:  As far as felony, I have a
20 younger brother who was a convicted felon for drugs, and I had
21 an uncle who was convicted of child molestation.
22           THE COURT:  Were they both here in Idaho?
23           PROSPECTIVE JUROR:  My brother's was in Idaho.  My
24 uncle was in Nevada.
25           THE COURT:  How long ago was the one in Nevada?

1          PROSPECTIVE JUROR:  30 years.  He's deceased now.

2          THE COURT:  Okay.

3          PROSPECTIVE JUROR:  It was about 30 years ago.

4          THE COURT:  Okay.  Were you privy to that at the

5    time?

6          PROSPECTIVE JUROR:  Well, I just knew that it was --

7    that apparently, you know, he was a convicted of it.  That's

8    all I knew.  I don't know anything about the case.

9          THE COURT:  Okay.  So, you personally were not the

10   victim?

11         PROSPECTIVE JUROR:  Oh, no.  No, I was not.

12         THE COURT:  Is there anything about either one of

13   those situations that would make it difficult for you to be

14   fair and impartial here?

15         PROSPECTIVE JUROR:  No, not at all.

16         THE COURT:  All right.  Thank you.

17         PROSPECTIVE JUROR:  My sister's significant other was

18   in prison for a while.  It was before they met, and I don't

19   know any details about it.

20         THE COURT:  Was that here in Idaho?

21         PROSPECTIVE JUROR:  I think it was in Montana, but I

22   am not sure.

23         THE COURT:  Anything about that situation that would

24   make it difficult for you to be fair and impartial here?

25         PROSPECTIVE JUROR:  No.

1          THE COURT:  Okay.  Thank you.

2          THE COURT REPORTER:  What's your number?

3          PROSPECTIVE JUROR:  19.

4          PROSPECTIVE JUROR:  My brother was convicted --

5          THE COURT:  What is your number?

6          PROSPECTIVE JUROR:  37.

7          THE COURT:  Thank you.

8          PROSPECTIVE JUROR:  Was convicted of armed robbery.

9          THE COURT:  How long ago?

10         PROSPECTIVE JUROR:  23, 24 years ago.

11         THE COURT:  Okay.  Anything about that that would

12    make it difficult for you to be fair and impartial here?

13         PROSPECTIVE JUROR:  No.  And my wife also works for

14    ECAP in Idaho Falls which provides housing for abused women and

15    children.

16         THE COURT:  All right.  Again, anything about that

17    that would make it difficult?

18         PROSPECTIVE JUROR:  No.

19         THE COURT:  No?  Okay.  Thank you.

20         Anyone else on that row?  Your number?

21         PROSPECTIVE JUROR:  23.

22         THE COURT:  Okay.

23         PROSPECTIVE JUROR:  I have a younger brother

24    currently serving a five-year sentence for felony drug charges.

25         THE COURT:  Here in Idaho?

1            PROSPECTIVE JUROR:  Uh-huh, Boise.

2            THE COURT:  Anything about that situation that would

3    make it difficult for you to be fair and impartial?

4            PROSPECTIVE JUROR:  No.

5            THE COURT:  Okay.  Thank you.  Anyone else on that

6    row?

7            PROSPECTIVE JUROR:  I am number 27.  My brother was

8    charged with a felony for lewd and lascivious conduct with a

9    minor.

10            THE COURT:  Here in Idaho?

11            MR. MURDOCH:  Idaho, yeah, in Bannock County.

12            THE COURT:  How long ago?

13            PROSPECTIVE JUROR:  It would have been in 2000.

14            THE COURT:  All right.  Do you remember the outcome?

15            PROSPECTIVE JUROR:  So, he was charged, and they --

16    after he served his probation and whatnot, they dropped it down

17    to a misdemeanor.

18            THE COURT:  So he pled guilty?

19            PROSPECTIVE JUROR:  I believe that's what it was,

20    yeah.

21            THE COURT:  Okay.

22            PROSPECTIVE JUROR:  But, I mean, I do believe,

23    especially in this case, everybody deserves a fair trial for

24    sure, because my mom was always, like, "Well, you have to look

25    at it from both sides and know everything, you know, to make

 1 | that judgment for sure."

 2 |       THE COURT:  Do you think you could be fair and

 3 | impartial?

 4 |       PROSPECTIVE JUROR:  Oh, absolutely.  Absolutely.

 5 | Because I know I'm grateful for the outcome of my brother's,

 6 | because without the jury, I mean, it could have gone a

 7 | different way or whatnot.  So, I mean, I think everybody's

 8 | definitely given that -- I mean, it should be fair no matter

 9 | what.  So --

10 |       THE COURT:  Thank you.

11 |       PROSPECTIVE JUROR:  You're welcome.

12 |       THE COURT:  Anyone on the front row?  No.

13 |       Do any of you work for any law enforcement agency or

14 | have a close relative who works in law enforcement?

15 |       Juror Number 3, who do you have?

16 |       PROSPECTIVE JUROR:  My grandfather was the Attorney

17 | General in Idaho.  That was years ago.  And I also have two

18 | uncles that are now lawyers here.

19 |       THE COURT:  Lawyers could go either way.

20 |       PROSPECTIVE JUROR:  Oh, okay.  Well --

21 |       THE COURT:  They could be good or bad.  The fact that

22 | you uncle was an Attorney General, part of his job then was to

23 | prosecutor cases, although mostly on appeals.  Is there

24 | anything about that that's going to make it difficult for you

25 | to be fair and impartial here?

1           PROSPECTIVE JUROR:  No.

2           THE COURT:  Do you know what type of law your -- did

3  you say your brothers?

4           PROSPECTIVE JUROR:  My grandfather was the Attorney

5  General.

6           THE COURT:  Okay.  The other two, who were they?

7           PROSPECTIVE JUROR:  It's Echo Hawk Law.  I don't

8  know.  I'm not entirely sure what it is that -- what part that

9  they are in.

10           THE COURT:  Who at Echo Hawk is it?

11           PROSPECTIVE JUROR:  Paul and Mark.

12           THE COURT:  Oh, the Echo Hawks themselves?

13           PROSPECTIVE JUROR:  Uh-huh.

14           THE COURT:  Okay.  They do a substantial amount of --

15  at least Paul does a substantial amount of criminal work.  Is

16  there anything about that situation that is going to make it

17  difficult for you to be fair and impartial?

18           PROSPECTIVE JUROR:  No.

19           THE COURT:  All right.  Thank you.

20           Anyone else that row?

21           How about on the next row?  Anyone else related to

22  someone in law enforcement?

23           You're Number 16.

24           PROSPECTIVE JUROR:  Yes.

25           THE COURT:  Okay.

1          PROSPECTIVE JUROR:  I have a couple cousins, two

2     cousins that are police officers.

3          THE COURT:  And is that here in Bannock County or --

4          PROSPECTIVE JUROR:  One of them is.

5          THE COURT:  Okay.  There will be officers testifying

6     in this case.  The mere fact that they are officers, are you

7     going to give them more credibility or less credibility just

8     because they wear the badge?

9          PROSPECTIVE JUROR:  No.

10          THE COURT:  Okay.  You think you can be fair and

11     impartial?

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Thank you.  Anyone on the next row?

14          PROSPECTIVE JUROR:  I have my husband's cousin who is

15     in dispatch.

16          THE COURT:  What is your number?

17          PROSPECTIVE JUROR:  Oh, 18.

18          THE COURT:  Thank you.

19          PROSPECTIVE JUROR:  He is working here in Bannock

20     County.  And I can't remember when he started.  I feel like it

21     has been, like, four months he's been there -- been here.

22          THE COURT:  Okay.  The fact that he's in law

23     enforcement and that he may even be associated with some of the

24     witnesses in this case, is that going to make it difficult for

25     you to be fair and impartial?

1          PROSPECTIVE JUROR:  No.  I don't -- I should be fair.

2          THE COURT:  Okay.  Thank you.  And your number now?

3          PROSPECTIVE JUROR:  37.

4          THE COURT:  37.

5          PROSPECTIVE JUROR:  I have a cousin in Idaho Falls

6    who is a police officer.

7          THE COURT:  Okay.  Same question.  Is that going to

8    make it difficult for you to be fair and impartial?

9          PROSPECTIVE JUROR:  No.

10          THE COURT:  All right.  And I think the gentleman

11   right next to you, did you raise your hand, 22?

12          PROSPECTIVE JUROR:  Yeah.  My soon-to-be

13   father-in-law is the lieutenant of the jail in Rigby County.  I

14   mean Jefferson County, Rigby.

15          THE COURT:  I don't think he's testifying.

16          PROSPECTIVE JUROR:  No.

17          THE COURT:  But there will be law enforcement.  Is

18   that going to be a problem for you?

19          PROSPECTIVE JUROR:  No, sir.

20          THE COURT:  All right.  Thank you.

21          PROSPECTIVE JUROR:  My son is --

22          THE COURT:  Tell me your number.

23          PROSPECTIVE JUROR:  Oh, sorry.

24          THE COURT:  24.

25          PROSPECTIVE JUROR:  My son is a Fish and Game officer

 1    for the Bureau of Indian Affairs.

 2             THE COURT:  Okay.  Anything about that that's going

 3    to make it difficult for you to be fair and impartial here?

 4             PROSPECTIVE JUROR:  No.

 5             THE COURT:  All right.  Just because a witness shows

 6    up in uniform, you are not going to automatically believe them

 7    because of your relative?

 8             PROSPECTIVE JUROR:  No.

 9             THE COURT:  Okay.  Thank you.

10             PROSPECTIVE JUROR:  I am number 25.  So, earlier I

11    told you my husband is a sheriff's deputy for Franklin County.

12             THE COURT:  Yes.

13             PROSPECTIVE JUROR:  So --

14             THE COURT:  Is that going to be a problem for you?

15             PROSPECTIVE JUROR:  I don't think so.  My whole

16    family is basically police officers, but I think I can be

17    impartial.

18             THE COURT:  Okay.  You are willing to weigh the

19    evidence that comes into this courtroom without regard to

20    anything that your family has told you about sex crimes?

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Okay.  Thank you.  Anyone else on that

23    row?

24             How about on the front row?  I like this front row.

25             Have any of you ever had an experience, good or bad,

1   with a law enforcement officer that might affect your service

2   as a juror in this case?

3            I ask that question because I once had trial where we

4   got a hung jury, and I didn't know till afterwards that one of

5   the jurors was just there to stick to it the police officers.

6   And, of course, they never told us that.

7            So is that a situation here for any of you?

8            Or the other way around, you're going to back up the

9   police officers no matter what anybody else says?

10           Everybody is willing to be fair and impartial?

11           Okay.  Have any of you ever served as a juror in a

12   criminal or a civil case or as a member of a grand jury in

13   either federal or state court before?

14           I know some of you have been on a jury, but I forgot

15   who.  Is there anybody on the back row?  No?

16           How about the second row?

17           Maybe we sent them all home already.

18           The third row, was there anybody?  Okay.  Juror

19   Number 17.

20           PROSPECTIVE JUROR:  Uh-huh.

21           THE COURT:  Remind me, were you on a civil or a

22   criminal trial?

23           PROSPECTIVE JUROR:  Civil.

24           THE COURT:  And where was that at?

25           PROSPECTIVE JUROR:  In Boise.

1          THE COURT:  All right.  Do you understand that the

2     burden of proof in a civil case is different than the burden of

3     proof in a criminal case?

4          PROSPECTIVE JUROR:  I do now.

5          THE COURT:  Okay.  Are you willing to listen to my

6     instructions on what I tell you the burden of proof is in this

7     case before you make a decision?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  In a civil case, you only have to prove

10    things by a preponderance of the evidence.  Just a slight

11    difference.  In a criminal case, it's beyond a reasonable

12    doubt.  And those are different standards.  Do you understand

13    that?

14         PROSPECTIVE JUROR:  Yes.

15         THE COURT:  And you are willing to follow my

16    instructions.

17         PROSPECTIVE JUROR:  Yes.

18         THE COURT:  All right.  Was it just the one jury?

19         PROSPECTIVE JUROR:  Yes, just one.

20         THE COURT:  Okay.  Thank you.  Anybody else on that

21    row?  You are Juror Number 36?

22         PROSPECTIVE JUROR:  36, yes.

23         THE COURT:  And was yours a civil or criminal?

24         PROSPECTIVE JUROR:  It was criminal.

25         THE COURT:  Here in Bannock County.

1           PROSPECTIVE JUROR:  Yes.

2           THE COURT:  And do you remember the outcome?

3           PROSPECTIVE JUROR:  I do, yeah.  Do you want me to

4    tell you?

5           THE COURT:  Sure.  Just guilty or not guilty.

6           PROSPECTIVE JUROR:  Guilty.

7           THE COURT:  What type of case was it?

8           PROSPECTIVE JUROR:  It was drug charges.

9           THE COURT:  Okay.  Was it my jury?

10          PROSPECTIVE JUROR:  Honestly, I don't remember.

11          THE COURT:  Okay.  Was there anything about that

12   experience that would make it difficult for you to be fair and

13   impartial here?

14          PROSPECTIVE JUROR:  No.

15          THE COURT:  Except for how enlightened the judge was,

16   but other than that?

17          PROSPECTIVE JUROR:  Yes.  No.

18          THE COURT:  You are okay?

19          PROSPECTIVE JUROR:  I'm okay.  Yeah.

20          THE COURT:  All right.  Anybody else on that row?

21          How about the front row?  Okay.

22          PROSPECTIVE JUROR:  29.

23          THE COURT:  Say that again?

24          PROSPECTIVE JUROR:  I am Number 29.

25          THE COURT:  29.  And was yours a civil or criminal?

1      PROSPECTIVE JUROR:  It was civil in Geneva, New York.

2      THE COURT:  Oh, you said that.  Was it a misdemeanor

3  or a felony?  Do you remember?

4      PROSPECTIVE JUROR:  I believe it was a misdemeanor,

5  but I am not positive though.

6      THE COURT:  Were there six jurors?

7      PROSPECTIVE JUROR:  No, there was 12.

8      THE COURT:  There were 12.  All right.  Do you

9  remember the outcome?

10      PROSPECTIVE JUROR:  Yes, they were found guilty.

11      THE COURT:  Guilty.  All right.  Anything about that

12  experience that would make it difficult for you to be fair and

13  impartial here?

14      PROSPECTIVE JUROR:  No.

15      THE COURT:  And if that judge gave different

16  instructions than the ones that I will give you, are you

17  willing to set aside his instructions and follow mine?

18      PROSPECTIVE JUROR:  Yes.

19      THE COURT:  Okay.  Thank you.  Was there anyone else?

20      Do any of you have a religious or moral position that

21  would make it impossible to render a judgment in this case?

22      No response.

23      If you are selected to sit on this case, I will give

24  you some preliminary instructions on the law.  Then at the

25  conclusion of the trial, I will fully instruct you on the

1  applicable law.

2          As a juror, you are obligated to follow the law given

3  to the jury by the Court.  Is there anyone who would be

4  unwilling or unable to follow the law as given in the

5  instructions, disregarding your own notions or ideas as to what

6  the law is or ought to be?

7          That's a long way to say are you willing to follow my

8  instructions?  The reason I ask that question -- I apologize

9  for telling war stories, but I am going to.

10         Caleb, you may know this person.  There was a

11 neighbor of mine that sat on a jury for me, and it ended up

12 being a hung jury.  And afterwards, he was bragging about the

13 fact that it was a hung jury, because he said he was a

14 passivist anarchist.  Whatever that is.  And it was -- he was

15 grateful that he was able to sit on a jury and to cause bedlam

16 and confusion.

17         I don't want anybody like that on my jury.  You got

18 to be willing to follow my instructions.  Is there anyone who

19 can't do that?  Okay.

20         Is there anyone who will be unable to render a

21 verdict solely on the evidence presented at the trial and in

22 the context of the law, as I instruct you, disregarding any

23 other ideas, notions, or beliefs about what the law is or

24 should be based on encounters you have had in the past in

25 reaching your verdict?

1            Again, it's just another way to say will you rely on

2    the facts that come in and the instructions that I give you?

3            All right.  Do any of you know any other member of

4    this prospective jury panel?  In other words, of those of you

5    sitting right here, do you know anyone else?

6            And the only reason I ask that question is because I

7    had two jurors.  One was a supervisor of the other, and he

8    basically told him, "You have vote my way or you won't have a

9    job."  I don't want that to happen either.  So, I am just

10   making sure we don't have that situation here.

11           Yes.

12           PROSPECTIVE JUROR:  I do know of this lady here.

13           THE COURT:  I'm sorry?

14           PROSPECTIVE JUROR:  I know of her.

15           THE COURT:  Tell me your number.

16           PROSPECTIVE JUROR:  I am 2.

17           THE COURT:  And you are pointing to Juror Number --

18           PROSPECTIVE JUROR:  In the green.

19           THE COURT:  18?

20           PROSPECTIVE JUROR:  Yes.

21           THE COURT:  How do you know her or of her?

22           PROSPECTIVE JUROR:  Her husband went to high school

23   with me.

24           THE COURT:  Her husband went to high school with you.

25           PROSPECTIVE JUROR:  Yeah.

1          THE COURT:  Did you know that?

2          PROSPECTIVE JUROR:  I didn't.  So sorry.

3          THE COURT:  Is there anything about that situation

4  that's going to make it difficult for you to give your own

5  opinion in this case?

6          PROSPECTIVE JUROR:  No.

7          THE COURT:  If you both ended up on the jury, would

8  you be okay with that?

9          PROSPECTIVE JUROR:  Yeah.

10          THE COURT:  Okay.  I guess I ought to ask you the

11  same question.  Is that going to be a problem for you?

12          PROSPECTIVE JUROR:  No, it should not be a problem.

13          THE COURT:  Okay.  We have a principal middle

14  school -- a middle school principal here that could sit between

15  you if we need to, although she's not up there yet, so -- all

16  right.

17          Is there any other reasons, whether I asked it or

18  not, that any of you feel you cannot serve as a fair and

19  impartial juror in this case?

20          All right.  What we are going to do now is the

21  attorneys each have about 20 minutes where they can ask you

22  some follow-up questions.  They can do that individually or of

23  you as an entire panel.  The government gets to go first.

24          MS. MCGRADY:  Thank you, Your Honor.  And I will try

25  to move through this quickly as it's getting late in the

1    afternoon.

2         We have all learned quite a bit about you from

3    questioning, making you go over the microphone, answer our

4    questions as well as do your questionnaires.  So, it's only

5    fair that I tell you a little bit about us.

6         I was actually born in Pocatello and raised all my

7    life in this area.  I moved to Boise because my husband's job

8    is there, so I actually work at the US Attorney's Office in

9    Boise.

10        I graduated from Idaho State University.  And my

11   husband and I have three kids.  I have a daughter who is 6.

12   She's graduating from kindergarten on Friday, which is crazy.

13   I have identical twin boys who are 4.  I call them the

14   twinados, because they can destroy my house in, like, 30

15   seconds fast.  It's very, very impressive, really.

16        My cocounsel, John Shirts, he was raised in Weiser,

17   Idaho, and works at the US Attorney's Office here in Pocatello.

18   He spent five years in the JAG working in the Special Victims

19   Unit there.  So he was traveling all around handling the

20   important cases for the Air Force, and now he and his wife live

21   here in Pocatello.  So, that's just a little bit about us.  We

22   didn't have to go stand in the corner with the microphone, but

23   I thought that was only fair.

24        We've talked a little bit about what the nature of

25   this case is going to be, and obviously we have discussed

1   briefly that some of the evidence is going to include

2   potentially sexually explicit images involving minors.  And

3   that's obviously a difficult thing for everybody in this room.

4   I have sort of a follow-up question to that in that you know

5   Mr. Shirts and I have the burden of proof in this case, and

6   certainly we are going to do our best to present this case and

7   minimize your exposures to those images.  However, it's going

8   to be necessary that some will be published.

9           So, is there anybody here that is going to have a big

10  problem with that or who is going to be angry at the government

11  for presenting those sort of images to you as exhibits or

12  evidence?  And it's okay.  We just want to know.  What we're

13  really trying to get at with these questions is if you're

14  thinking, in the back of your mind, "That's going to be really

15  hard for me," or "if Ms. McGrady is putting that up there on

16  the screen, then I'm going to be very irritated that she's

17  making me look at that."

18          Anybody have any feelings about that?  Just raise

19  your hand.  Nobody has any strong feelings about that either

20  way?  Okay.

21          All right.  We've talked a little bit about prior

22  experiences that you all have had in the area of potential

23  sexual abuse or knowing people in your lives.  Is there anybody

24  here who feels like they know somebody who has been wrongfully

25  accused of some sort of sexual misconduct, whether that be

child molestation, some sort of sexual assault, or you feel
that the person didn't do it, but somebody made an accusation
against them unfairly?

Anybody have any experience like that?  I see no
hands.

Okay.  Does anybody have any experiences where maybe
in, like, some sort of custody case or family law case, where
allegations were being made by one spouse to another that were
unfair and related to neglect or abuse of children?  Anything
of that nature?  I see no hands.

Okay.  This might be quicker than I thought.  This
is -- this is a first for me.  So, a couple of you have
specialized knowledge in the area of technology just by hearing
some of the jobs that you all do.

Can you raise your hands for me if you have
specialized education or training in the area of technology?
Okay.  I'm going to go through the back row first.

Juror Number 1, can you tell me about that
experience?

PROSPECTIVE JUROR:  (Unintelligible.)

THE COURT REPORTER:  I'm sorry.  I can't hear you.

THE COURT:  Wait for the microphone.

MS. MCGRADY:  Wait for the microphone.

PROSPECTIVE JUROR:  (Juror Number 1)  Essentially, we
have worked with law enforcement on, you know, understanding

1    how pictures can be downloaded, how it can be shoved out across

2    the Internet.  Impact of trauma on the victims when this

3    happens, whether it's child, whether it's adult, whether it's

4    teen.

5            MS. MCGRADY:  So you worked in training with law

6    enforcement in the area of technology?

7            PROSPECTIVE JUROR:  Yes.

8            MS. MCGRADY:  Okay.  And so we've kind of talked

9    about this as far as your personal experiences, and it sounds

10   like you have a lot of background and understand cases like

11   this.

12           PROSPECTIVE JUROR:  Yes.

13           MS. MCGRADY:  So, it's important that -- and when you

14   guys are back deliberating in the jury room, that the evidence

15   that's being discussed is the evidence that's presented in

16   court --

17           PROSPECTIVE JUROR:  Yes.

18           MS. MCGRADY:  -- by the government.  And so are you

19   going to be able to kind of leave those personal experiences

20   behind and not talk about things with your fellow jurors or

21   training that you've had and just talk about the evidence that

22   was presented by the government?

23           PROSPECTIVE JUROR:  Yes.

24           MS. MCGRADY:  Yes.  Okay.  All right.  And who is the

25   next juror?  Juror Number 4?

1          PROSPECTIVE JUROR:  Number 4.

2          MS. MCGRADY:  Yes, sir.

3          PROSPECTIVE JUROR:  Sorry.  Yeah, long time in

4    technology.  1993 in the Bay Area.  Worked for Hitari Games,

5    watched the Internet be born in Silicon Valley.

6          MS. MCGRADY:  So, your whole life you've been working

7    in tech.

8          PROSPECTIVE JUROR:  Yeah, and I teach at ISU the

9    Creative Suite, Photoshop, and Design Premiere.  I'm

10   well-versed in technology.

11         MS. MCGRADY:  In technology.

12         PROSPECTIVE JUROR:  Yeah.

13         MS. MCGRADY:  So, you will probably understand some

14   of my evidence better than I do then maybe, but are you going

15   to be able to put aside your personal experiences and just

16   listen to the evidence that's presented by our witnesses?

17         PROSPECTIVE JUROR:  You bet.

18         MS. MCGRADY:  Okay.  And so are you going to feel the

19   need to share your personal knowledge about technology with

20   your fellow jurors or are you going to leave it as to what's

21   presented in the courtroom?

22         PROSPECTIVE JUROR:  There's a point when we

23   deliberate or whatever that it sounds like, at that point, you

24   could maybe share, whatever, your experience is with.  But

25   prior to that, I'm pretty sure I thought I heard that we don't

1   talk about it with each other or something.

2           MS. MCGRADY:  Sure.  Okay.  So, are you going to be

3   focusing your discussions with your fellow jurors on the

4   evidence you hear presented in court or are you going to want

5   to talk more about your technology knowledge and your

6   experiences?

7           PROSPECTIVE JUROR:  The Court is -- I mean, what you

8   guys present is going to be what it is.

9           MS. MCGRADY:  Okay.

10          PROSPECTIVE JUROR:  I mean, if I have fellow jurors,

11  that we're at that point that want to know more that I could

12  help, then maybe I could share that, I guess, at that time if

13  that's relevant, I guess.

14          MS. MCGRADY:  Okay.  All right.  And we had another

15  person this row.  Yes, sir.

16          PROSPECTIVE JUROR:  38.  My education is with

17  software development and electrical engineering, so circuit

18  boards and stuff.  Professional is just software development.

19          MS. MCGRADY:  Okay.  And I just have the same

20  question posed to you.

21          PROSPECTIVE JUROR:  No.

22          MS. MCGRADY:  So, you are going to just listen to the

23  evidence --

24          PROSPECTIVE JUROR:  Yep.

25          MS. MCGRADY:  -- that's presented in court?

1        Okay.  All right.  And we had a second row.  We have

2   some tech-savvy people.  Okay.  What is your juror number?

3        PROSPECTIVE JUROR:  I am 15.

4        MS. MCGRADY:  Okay.  Juror Number 15.

5        PROSPECTIVE JUROR:  I have worked in health IT for 12

6   years now, and so I understand a lot of the technology and work

7   with software developers all day long.  And did you want any

8   more?  Is it just related to technology or just any training at

9   all?

10       MS. MCGRADY:  Sure.  Yeah.  Just specifically -- I

11  was specifically asking about technology.

12       PROSPECTIVE JUROR:  Okay.

13       MS. MCGRADY:  And do you have any concerns about your

14  ability to listen to the evidence in this case given your

15  background with technology?

16       PROSPECTIVE JUROR:  No.

17       MS. MCGRADY:  Okay.  And then did we have anybody

18  else on this row here?  No?

19       Okay.  The next row?  Yes, sir.  What is your juror

20  number?

21       PROSPECTIVE JUROR:  19.

22       MS. MCGRADY:  19.  Go ahead.  Wait for the microphone

23  I guess.

24       PROSPECTIVE JUROR:  Is your question specific?

25       MS. MCGRADY:  What is your background and training in

1    the area of technology.  You have specialized training.

2              PROSPECTIVE JUROR:  So, I am a software developer.

3    Been programming since I was about 9.

4              MS. MCGRADY:  So, basically your whole life?

5              PROSPECTIVE JUROR:  Yes.

6              MS. MCGRADY:  You were kind of a child prodigy when

7    it came to technology?

8              PROSPECTIVE JUROR:  I don't know about that.  I've

9    made plenty of bugs.

10             MS. MCGRADY:  Sure.  Okay.  And if you have evidence

11   from the government in the form of testimony about forensic

12   evidence and things on computers, are you going to be able to

13   listen to their opinion and what they're saying or are you

14   going to be more driven by your own personal experiences and

15   knowledge with technology?

16             PROSPECTIVE JUROR:  Yes, I can listen.

17             MS. MCGRADY:  Okay.  All right.  Thank you.

18             And do we have anybody else on this row?  Nope.

19             And then Judge Nye's favorite row, first row,

20   anything?  Nope.

21             Okay.  Now, obviously, this is a case that is being

22   prosecuted by the federal government.  John and I work for the

23   US Attorney's Office.  And I know that there is a lot going on

24   politically in Washington, DC, these days, that no matter what

25   side you are on, people have strong opinions or may not

1    necessarily be happy about some of the things that are going

2    on.

3            Is there anybody who just has strong opinions either

4    way about the federal government?  And it's okay for you to

5    share them and let me know that you don't necessarily like the

6    federal government.  I just want to know kind of if anybody has

7    those -- those opinions.  Anybody?  Raise their hands.  No?

8            Okay.  And the similar question, Judge Nye also

9    mentioned if you've ever had any negative experiences with any

10   members of law enforcement.  And the same goes -- I'm going to

11   ask the same question just with any sort of prosecuting agency.

12   It sounds like you have had family or friends who have been

13   prosecuted for criminal offenses, so has anything happened in

14   any of those cases that has made you think negatively about the

15   criminal justice system or how a particular case was handled?

16   Anybody raise their hands?

17           Okay.  I'm going to ask just a couple follow-up

18   questions of specific jurors.  Juror Number 11, is that you?

19   And you mentioned that your husband had a prior conviction, but

20   that was before you were married?

21           PROSPECTIVE JUROR:  Yes.

22           MS. MCGRADY:  Does he ever talk about that with you?

23           PROSPECTIVE JUROR:  (Shakes head.)

24           MS. MCGRADY:  Okay.  Do you know much about the

25   circumstances?

1          PROSPECTIVE JUROR:  I don't really know a lot.  It

2     was mostly a fraud case, so I don't know a lot.

3          MS. MCGRADY:  Okay.  And is there anything about that

4     that -- any, just, comments that your husband made to you that

5     he was treated fairly or unfairly during that process?

6          PROSPECTIVE JUROR:  Like I said, we don't really talk

7     about it.

8          MS. MCGRADY:  Okay.

9          PROSPECTIVE JUROR:  So --

10         MS. MCGRADY:  No real conversations?

11         PROSPECTIVE JUROR:  Not really.  It was part of his

12     past.  It stayed in the past.

13         MS. MCGRADY:  Okay.  Fair enough.

14         All right.  Juror Number 37.  Yes, sir.  Just take

15     the microphone from your fellow juror.  Sounded like you had a

16     family member -- was it an armed robbery conviction?  Is that

17     what you mentioned?

18         PROSPECTIVE JUROR:  Correct.

19         MS. MCGRADY:  And I missed who that was in your

20     family.

21         PROSPECTIVE JUROR:  It was my brother.

22         MS. MCGRADY:  Your brother.  And were you involved in

23     that case at all?

24         PROSPECTIVE JUROR:  No.

25         MS. MCGRADY:  Did you talk about that case with him?

1                    PROSPECTIVE JUROR:  No.

2                    MS. MCGRADY:  And so do you know much about

3     circumstances surrounding that?

4                    PROSPECTIVE JUROR:  Not a whole lot.  I was younger,

5     and he got deported over the deal.

6                    MS. MCGRADY:  He got what?  Excuse me.

7                    PROSPECTIVE JUROR:  He got deported over the

8     situation, so we don't communicate as much anymore.

9                    MS. MCGRADY:  Okay.  And how did you feel about the

10    fact these was prosecuted and ultimately that ended up in a

11    deportation?

12                   PROSPECTIVE JUROR:  Not very happy about it, but --

13                   MS. MCGRADY:  And can you tell me a little bit more

14    about that?

15                   PROSPECTIVE JUROR:  Kind of split up the family.  One

16    of eight of us got sent back --

17                   MS. MCGRADY:  Okay.

18                   PROSPECTIVE JUROR:  -- to Mexico and the rest of us

19    are here.

20                   MS. MCGRADY:  And that was likely the federal

21    government that did that --

22                   PROSPECTIVE JUROR:  It was.

23                   MS. MCGRADY:  -- deportation; right?  So, is there

24    anything about your personal feelings in that affecting your

25    family that is going to make it so that you have a negative

1  view of the prosecution in this case?

2          PROSPECTIVE JUROR:  No.

3          MS. MCGRADY:  You can be fair and impartial on that?

4          PROSPECTIVE JUROR:  Yes.

5          MS. MCGRADY:  Okay.  Thank you.  And then there was

6  Juror Number, I think, 23.  Yes, ma'am.  And did you mention

7  you had a family member also?

8          PROSPECTIVE JUROR:  My younger brother.

9          MS. MCGRADY:  Your younger brother.  And did you say

10 that that was for a sexual offense?

11         PROSPECTIVE JUROR:  No, drug.

12         MS. MCGRADY:  No.  Okay.

13         PROSPECTIVE JUROR:  Drugs.

14         MS. MCGRADY:  And were you involved much with your

15 brother when he was going through that process?

16         PROSPECTIVE JUROR:  No, I was not.

17         MS. MCGRADY:  Okay.  And did he talk to you about it

18 at all?

19         PROSPECTIVE JUROR:  No.  From my understanding, there

20 wasn't really, like, any trial.  He just pleaded guilty and

21 then there was a sentence for it.

22         MS. MCGRADY:  Okay.  And do you feel like he was

23 treated fairly during that process or do you have any personal

24 knowledge about the process?

25         PROSPECTIVE JUROR:  I really don't have a lot of

1    knowledge.  I wasn't really involved in all of that.

2              MS. MCGRADY:  Okay.  All right.  Thank you so much.

3              PROSPECTIVE JUROR:  Uh-huh.

4              MS. MCGRADY:  Juror Number 27.  I think I was mixing

5    you up a little bit.  It was your younger brother who had a sex

6    offense --

7              PROSPECTIVE JUROR:  My older brother.

8              MS. MCGRADY:  Oh, your older brother.  Okay.  And I

9    think you talked about the importance of being fair to both

10   sides.

11             PROSPECTIVE JUROR:  Absolutely.

12             MS. MCGRADY:  Okay.  And were you involved at all in

13   your brother's case while that was going on?

14             PROSPECTIVE JUROR:  No, because I was only 16 and he

15   was 18.

16             MS. MCGRADY:  Okay.

17             PROSPECTIVE JUROR:  And so he was a senior in high

18   school.  But I know, like, on the weekends he spent time in

19   jail, and then would come home during the week and stuff.  And

20   then so I said earlier I thought he pled guilty, but I don't

21   know, because I do think they went to a jury trial.

22             MS. MCGRADY:  A jury trial?

23             PROSPECTIVE JUROR:  Yeah.

24             MS. MCGRADY:  Okay.  I gotcha.  And was that

25   something that was discussed inside your house, you know, with

1    your family as it was going on?

2         PROSPECTIVE JUROR:  Not really during.  All I know is

3    he couldn't be around minors except for like my sister and I

4    that were younger, and then even as -- because my -- my -- the

5    sister right above me had a little girl, and so there were

6    stipulations, like, on when he could come over, when he

7    couldn't come over, things like that.

8         But other than that, we didn't really discuss the

9    case or whatnot.  All I knew is he was being charged with lewd

10   and lascivious conduct, so --

11        MS. MCGRADY:  And did your brother -- I mean,

12   obviously, he's being prosecuted for a crime, so I don't think

13   that anyone has ever been happy about something like that,

14   obviously.  Did he feel like he was treated fairly during the

15   court system or by law enforcement who investigated that?

16        PROSPECTIVE JUROR:  I think so in general.  Like I --

17   I mean, because my mom always looked at it as, "Well, look at

18   it from the other side, like if you were on the receiving end

19   or whatnot."  But I think that everybody was definitely fair on

20   his behalf.

21        MS. MCGRADY:  Okay.

22        PROSPECTIVE JUROR:  I mean, except for his probation

23   officer years later, but that's another story.

24        MS. MCGRADY:  Okay.  So, tell me about that.

25        PROSPECTIVE JUROR:  Oh, just the probation officer

1  didn't like him.  He was in our ward growing up, the probation

2  officer was, and he would find an excuse to, like, kind of give

3  my brother a hard time so that he could punish him,

4  essentially.  For some reason, he didn't like my dad, so he

5  kind of took it out on him.  But, I mean, that was their beef,

6  not mine, so --

7            MS. MCGRADY:  Is there anything about that sort of

8  negative experience with law enforcement that would affect

9  anything in this case?

10            PROSPECTIVE JUROR:  No.  No.

11            MS. MCGRADY:  All right.  Thank you.  And I think we

12  can give the microphone back to the clerk.  Thank you.

13            And I might not get any hands on this, but I really

14  am interested to know if anybody has any sort of, like, strong

15  First Amendment views when it comes to, like, artistic images,

16  pornography, creative images or videos that one could produce

17  or create.  I know that if I ask if anybody has First

18  Amendment -- or has First Amendment concerns about child

19  pornography, no one is going to answer that in the affirmative.

20            But does anybody have any strong First Amendment

21  views about images or videos that people have a right to create

22  under the First Amendment?  Yeah?  Juror Number --

23            PROSPECTIVE JUROR:  4.

24            THE COURT:  Can you translate this one for me?

25            PROSPECTIVE JUROR:  It's sort of vague.  It's really

1  vague.  But when it comes to people under 18, that's pretty
2  straightforward.
3          MS. MCGRADY:  Okay.  But as far as, like, just in
4  general and other artistic ways, you obviously are a designer,
5  so --
6          PROSPECTIVE JUROR:  Yeah.
7          MS. MCGRADY:  -- you would support creative rights in
8  that regard?
9          PROSPECTIVE JUROR:  Yeah, big time, yeah.
10          MS. MCGRADY:  But do you think that there's any gray
11  area when it comes to children under the age of 18?
12          PROSPECTIVE JUROR:  Absolutely not.
13          MS. MCGRADY:  Okay.
14          PROSPECTIVE JUROR:  That's what I said, yeah.
15          MS. MCGRADY:  Okay.  Thank you.  Anybody else have
16  any sort of similar views?
17          Okay.  All right.  I'm going to sit down here
18  shortly.  I just wanted to talk just briefly about what sort of
19  evidence you all expect the government to present in a case
20  like this.
21          Does anybody here watch those true crime shows, like
22  *Law and Order*, *Special Victims Unit*, things like that?
23  Anybody?  Yeah.  Yeah.  That's kind of one of the reasons I
24  became a lawyer.  Then I realized that it's not really that
25  exciting in real life.

1          But on those shows, you know, there's always these

2     crazy things that happen during trial.  The government always

3     has, like, fingerprints and forensic evidence that happens in,

4     like, 30 seconds flat, and there's surprise witnesses and

5     things like that.

6          Does anybody feel, like, they are kind of going to be

7     expecting that sort of show in this courtroom?  I see some

8     laughter.  Okay.  Not so much.

9          I'm just going ask a couple individual jurors a

10    question.  It's like back in law school when we used to get

11    called on all the time just to talk.  So, I'm going to start

12    here.  What's your Juror Number?

13          PROSPECTIVE JUROR:  35.

14          MS. MCGRADY:  35.  So, in a case like this, what sort

15    of evidence do you think you are going to be seeing in the

16    courtroom?

17          PROSPECTIVE JUROR:  Definitely images, videos.

18          MS. MCGRADY:  Sure.

19          PROSPECTIVE JUROR:  Testimony.  So, that's pretty

20    much what I think will be.

21          MS. MCGRADY:  Okay.  And if I had to prove to you

22    what happened during the Super Bowl, would you feel like I

23    would have to call all, you know, several thousand people who

24    were at the Super Bowl as witnesses to say what they saw?

25          PROSPECTIVE JUROR:  No.

1          MS. MCGRADY:  No.  Do you think it would be

2   sufficient if I just called a couple people who had different

3   vantage points or different experiences to talk about what

4   happened that day?

5          PROSPECTIVE JUROR:  Yes.

6          MS. MCGRADY:  Okay.  Does anybody disagree with that?

7   No?  Okay.

8          Juror Number 29 -- do you want to pass the mike down

9   here?  One of the toughest things that we ask you to do as

10  jurors is to weigh the credibility of different witnesses.  You

11  have two different people who are saying two different things.

12  So, how is it that you're going to go about deciding what you

13  believe is credible and not credible?

14         PROSPECTIVE JUROR:  Mainly all I will do is just look

15  at the evidence that's being given and try to decipher from the

16  evidence of which one I believe is the most truth.

17         MS. MCGRADY:  What if the evidence is conflicting?

18  What if one person testifies that something happened and

19  another person testifies that it didn't?

20         PROSPECTIVE JUROR:  Then we just have to look at both

21  of the evidence as witnesses that's being presented and try to

22  look at the circumstances of the witness that they have.

23         MS. MCGRADY:  Okay.  And how are you going to make

24  that decision?  When you're saying, "Do I find this person

25  credible or do I find the other person credible?"  How are you

1    going to make that decision?

2              PROSPECTIVE JUROR:  I believe it's just by, again,

3    looking at the evidence that's given to us and trying to see if

4    there's something that backs up exactly what they are saying.

5              MS. MCGRADY:  Okay.  Juror Number 30.

6              PROSPECTIVE JUROR:  Can you skip me?

7              MS. MCGRADY:  What?

8              PROSPECTIVE JUROR:  Can you skip me?

9              MS. MCGRADY:  Oh, you don't want to talk?

10             PROSPECTIVE JUROR:  No.

11             MS. MCGRADY:  Sure.  That's fair enough.

12             THE COURT:  You are picking on my favorite row.

13             MS. MCGRADY:  Well, that's why, because they haven't

14   been talking, Judge.

15             All right.  Juror Number 31.

16             PROSPECTIVE JUROR:  Yes.

17             MS. MCGRADY:  Can you answer the same question?  If

18   you're presented with conflicting evidence in this case, how

19   are you going to go about making a decision?

20             PROSPECTIVE JUROR:  I think you have to look at all

21   of the evidence, not just one piece.  You have to be able to

22   piece it together almost like a -- like a puzzle.

23             MS. MCGRADY:  Like a puzzle.  And what if one witness

24   says something happened and another witness says it didn't?

25             PROSPECTIVE JUROR:  Again, I think it's going back to

1   looking at everything, tying everything together, all the
2   different witnesses, everything else.  And as far as
3   credibility, it's -- to me, it's going to be the evidence.
4           MS. MCGRADY:  Okay.  The evidence as a whole?
5           PROSPECTIVE JUROR:  Yes.
6           MS. MCGRADY:  Okay.  And when somebody's sitting in
7   the witness stand, what sort of things are you going to be
8   looking for when they are testifying to determine whether they
9   are telling the truth?
10          PROSPECTIVE JUROR:  I think you can read people's
11  faces.  Hesitation.
12          MS. MCGRADY:  Okay.  All right.  And do you want to
13  pass the mike kitty-corner behind you?  What's your Juror
14  Number, ma'am?
15          PROSPECTIVE JUROR:  27.
16          MS. MCGRADY:  And one more over.  I talked to you for
17  quite a while.  You're off the hook.
18          PROSPECTIVE JUROR:  26.
19          MS. MCGRADY:  26.  I'm going ask the same question to
20  you, as far as this issue of as a jury, it's very difficult.
21  You are going to be back there with your fellow jurors trying
22  to decide what the facts are and what you believe about what
23  was presented.  So, what sort of things are you going to do to
24  determine what you find credible and not credible?
25          PROSPECTIVE JUROR:  Well, I'm hoping the evidence

1    will help us.

2             MS. MCGRADY:  I hope so, too.  But specifically, I

3    mean, in your everyday life, if some one person tells you

4    something happened and someone else says something didn't

5    happen, how do you decide who is telling you the truth?

6             PROSPECTIVE JUROR:  Well, I tell my kids the best

7    indicator of future behavior is past behavior.

8             MS. MCGRADY:  Okay.  So, that's important, whether

9    somebody has done something like this in the past.

10            PROSPECTIVE JUROR:  Yeah.

11            MS. MCGRADY:  Okay.  Pass the microphone down.

12   What's your Juror Number?

13            PROSPECTIVE JUROR:  25.

14            MS. MCGRADY:  25.  Juror Number 25, what do you think

15   about that?  She talked about past behavior.  Can you think of

16   anything else?

17            PROSPECTIVE JUROR:  Honestly, like in my day-to-day

18   job, I think I try to -- I look at people's facial expressions,

19   how they're acting, emotions, that type of thing.

20            MS. MCGRADY:  Okay.  All right.  Is there anybody

21   else who wants to help me out, not make me call on them?

22   Anybody have any thoughts about something?

23            PROSPECTIVE JUROR:  Reading people.

24            MS. MCGRADY:  Yeah.  What's your number?

25            PROSPECTIVE JUROR:  33.

1          MS. MCGRADY:  Reading people.

2          PROSPECTIVE JUROR:  I think you can read people if

3    you watch their eyes.

4          MS. MCGRADY:  Okay.

5          PROSPECTIVE JUROR:  I really do.

6          MS. MCGRADY:  Okay.  So, demeanor, body language.

7          PROSPECTIVE JUROR:  And I didn't want to say this,

8    but I actually hired somebody to get my husband out of the

9    prison in Florence, Arizona.  And they actually let me get up

10   and speak.  And I learned from a girlfriend how to read people

11   then.

12         And I felt like an attorney then, and I never had any

13   training.  And the parole board did give my husband that

14   chance.  And I felt that reading that parole board and letting

15   them know how I felt was on my side that day, and they did let

16   him out --

17         MS. MCGRADY:  Okay.

18         PROSPECTIVE JUROR:  -- early.

19         MS. MCGRADY:  And it's like an auction.  If you move,

20   I'm going to go right there.  Pass the mike.

21         PROSPECTIVE JUROR:  I don't understand that part

22   about somebody reading somebody.  How do you read somebody like

23   that?

24         MS. MCGRADY:  What's your Juror Number?  Sorry.

25         PROSPECTIVE JUROR:  I'm sorry.  I'm Number 5.

1          MS. MCGRADY:  Number 5.  Okay.  Okay.  So, you don't

2     understand --

3          PROSPECTIVE JUROR:  Well, I don't know what -- I

4     mean, we're here to be impartial.

5          MS. MCGRADY:  Sure.

6          PROSPECTIVE JUROR:  And we're supposed to have our

7     opinions, but just because somebody looks a certain way, I

8     don't know that that would be a reason for me to change my --

9     I'm looking at the evidence like you said, but I don't know

10    that that should be fair.  I mean, it's not fair.  You know,

11    what I mean?  I would not judge this man by what he looked like

12    or --

13         MS. MCGRADY:  Sure.

14         PROSPECTIVE JUROR:  -- you know, whatever he was --

15    you know, even though he looks like a lunatic, or crazy, or

16    whatever.

17         Anyway, no.  I mean, because I've just been sitting

18    here listening to these other people.  And so I'm thinking to

19    myself, am I going to be -- you know, I want to look at the

20    evidence and try not to -- because it's not my place to judge

21    anyone.

22         MS. MCGRADY:  Sure.

23         PROSPECTIVE JUROR:  You know, so --

24         MS. MCGRADY:  That age-old saying "Don't judge a book

25    by its cover."

1          PROSPECTIVE JUROR:  Right.  Right.  And so that would

2     be my only concern is basically what I'm saying.

3          MS. MCGRADY:  Okay.  So, what are you going to rely

4     on?  I mean, this is hard question; right?

5          PROSPECTIVE JUROR:  Yeah.  Well, that's why I haven't

6     said anything before.

7          MS. MCGRADY:  Right.

8          PROSPECTIVE JUROR:  But I would -- definitely the

9     evidence, of course, and I would try not to be judgmental based

10    on, like you said, the way they look or -- it would have to be

11    the evidence that would be the difference between making a

12    decision.

13         MS. MCGRADY:  Okay.  All right.  So, we are sharing

14    opinions.  I like it.  Anybody else have anything that they

15    want to say on that point?  No?

16         Okay.  I always ask this question, because it's just

17    very important that, in this case, that Mr. Goodwin gets a fair

18    trial.  That's absolutely what everyone wants.  We want the

19    United States to get a fair trial as well.

20         So, as we are sitting here, is there anything else in

21    the back of your mind that you're thinking, "If Judge Nye had

22    asked me that or if Ms. McGrady had asked me that, then I would

23    have said this, and it's something that they want to know"?

24         Anybody here?  Because this is sort of your last

25    opportunity for me to ask you this, knowing that we just want a

1    really fair process this week.

2            Does anybody have anything that you want to share

3    with me or that's in the back of your mind?

4            Yes, sir.  And you are Juror Number 4?

5            PROSPECTIVE JUROR:  Number 4 again.  So, I mean, I

6    guess I'm a little concerned that it's only a three- or

7    four-day trial; right?

8            MS. MCGRADY:  Sure.

9            PROSPECTIVE JUROR:  I suspect that you had said some

10   of the charge are Internet related, right?  So, I suspect --

11   I'm just guessing, right?  That you already have these -- his

12   computer and all of his knowledge of his downloads and all that

13   kind of crap.  So, that's going to be pretty cut-and-dried, I

14   suspect.

15           And then you said something about the -- there's a

16   person involved.  Like a person in the area involved that was

17   molested or something.  So, that's the other part of the

18   charge, I guess.  I don't know.

19           MS. MCGRADY:  So, I'm talking in generalities about

20   cases like this.  I haven't talked any specifics about the

21   evidence only to say that -- that you will be exposed to images

22   involving minors.

23           PROSPECTIVE JUROR:  Sure.  Yeah.

24           MS. MCGRADY:  So, we've talked about that.  But as

25   far as the facts of the case, we haven't discussed that, and

1    that's not the time.  The time is going to be this week where

2    we're required to present evidence, and then you decide if

3    we've proven this case.

4              So, whether or not this is cut and dried, as you say,

5    is to be determined at this point, right?

6              PROSPECTIVE JUROR:  Indeed.

7              MS. MCGRADY:  Because you don't know --

8              PROSPECTIVE JUROR:  I don't.

9              MS. MCGRADY:  As you sit here, do you know what

10   Mr. Goodwin did?

11             PROSPECTIVE JUROR:  Other than what the judge said

12   there was, like, three or four charges, I think.

13             MS. MCGRADY:  Okay.

14             PROSPECTIVE JUROR:  I'm trying to keep track.

15             MS. MCGRADY:  Okay.  And do you know what Mr. Goodwin

16   may not have done?

17             PROSPECTIVE JUROR:  I have no idea.  Yeah.

18             MS. MCGRADY:  Exactly.  Okay.

19             PROSPECTIVE JUROR:  I need to see the evidence.

20   You're right.

21             MS. MCGRADY:  Okay.  That's what I -- that's what I'm

22   getting at.  So, you wouldn't make a decision until you saw

23   that evidence.

24             PROSPECTIVE JUROR:  No.  But I just a little

25   concerned by the timeliness.  That was my only --

1              MS. MCGRADY:  The timing.

2              PROSPECTIVE JUROR:  -- real thing is you said it was,

3    like, three or four days.  I don't know.  It seems quite -- I

4    don't know.

5              MS. MCGRADY:  Yeah.  And I can assure you --

6              PROSPECTIVE JUROR:  I have never done this.

7              MS. MCGRADY:  -- we are going to try to be as

8    efficient as we can, because we understand this is inconvenient

9    to your life.

10             PROSPECTIVE JUROR:  That's not the point.  I'm off

11   all summer.  I could be here all summer.

12             THE COURT:  I can't be.

13             MS. MCGRADY:  The judge has a hefty criminal docket,

14   so -- anybody else?  I mean, really, just looking inside your

15   head and your hearts, is there anything that you think we need

16   to know in order to make this process fair for everyone?

17             All right.  Thank you for speaking with me.  I

18   appreciate it.

19             THE COURT:  Mr. Murdoch.

20             MR. MURDOCH:  Thank you, Your Honor.

21             Okay.  I'm going to stand here so the mikes pick me

22   up.  Can everyone hear me okay?

23             Okay.  Just a little bit about me.  Out of everything

24   that I do as an attorney, this is my favorite thing to do.  I

25   love doing jury trials, and I love the process that we go

1    through.  And I hope everyone here has a good experience and a

2    greater understanding of how our system works.

3            And I can tell you, my client, right now, where he's

4    sitting is not a good place.  And that's one of the reasons why

5    I like doing jury trials, because I am proud to stand with

6    anyone who is accused of a crime and make sure that their

7    rights are protected.

8            And that's really getting at the heart of what we are

9    doing in this part of the trial, is we are just trying to

10   select a jury that is going to look at this case fairly and

11   impartially, that's going to base it just on the evidence

12   that's presented.  Not because of any other reasons that they

13   may have or any past experiences that would cause them to judge

14   my client because of those.

15           Instead, he deserves a trial.  Deserves to have

16   jurors that are going to look only at the evidence that's

17   presented.  And so that's what we're doing here today is trying

18   to figure out if there's any reason why you may not be able to

19   serve as a juror and able to look at that evidence fairly.

20           So, if there's anything that I ask that's

21   uncomfortable, just as the judge did and you want to talk about

22   it in private, let me know, and we'll certainly accommodate

23   you.

24           I guess my first question is this, and I believe that

25   there's going to be at least one person that answers this.  But

1   is there anyone here who is excited to serve on this jury

2   today?

3            Okay.  There's at least one.  I got a couple others.

4   Okay.  Let's start off in the back row.  I believe it's Juror

5   Number 4.  Okay.  Let's have you get the microphone, and then

6   we will talk about that.

7            PROSPECTIVE JUROR:  I will stop raising my hand soon

8   enough.  This is really an important thing.  Like the movie

9   that we saw downstairs, it's important.  If I was, you know, in

10  that other spot, I would want a jury of my peers as well.  So,

11  I think it's super important, and I have the summer off.  So,

12  look-a-there.

13           MR. MURDOCH:  That's great.  And I just want to tell

14  you, I really appreciate your willingness to do this and seeing

15  how important this is.  We'll --

16           PROSPECTIVE JUROR:  I'm 33.

17           MR. MURDOCH:  Okay.  I spoke over you.  Could you say

18  that again?

19           PROSPECTIVE JUROR:  I'm 33.

20           MR. MURDOCH:  33.

21           PROSPECTIVE JUROR:  I think there has been a lot of

22  people put in prison that shouldn't have been put in prison,

23  and I think the evidence, you're right, is really, really

24  important.  But I have a husband that was put in prison, and he

25  was railroaded.  And so I can be partial, but I am real

1   excited.  I've always wanted to do this, to see how the

2   government does things.

3          And when I got that summons, I wasn't one of those

4   people that said, "Ah, I don't want to do this."  I was really,

5   really excited.  And when I had to call for three weeks before

6   you'd let me come, I was really excited.  You know, I think

7   this is something that all Americans should do and be excited

8   about.  Okay?

9          And I will do my best to do whatever I need to do to

10  either prove him guilty or innocent.  And like I said,

11  there's -- most of the people here have had some sad

12  backgrounds with the kind of case this is, but I'm here to do

13  my justice for this gentleman.

14          MR. MURDOCH:  Thank you very much.

15          PROSPECTIVE JUROR:  Okay.

16          MR. MURDOCH:  I appreciate that.  I believe there was

17  someone else in the back row.

18          Okay.  That's Juror Number --

19          PROSPECTIVE JUROR:  38.

20          MR. MURDOCH:  38.  Thank you.  Could you tell us?

21          PROSPECTIVE JUROR:  Yeah, I was actually the exact

22  opposite.  I was really dreading having to come out.  But then

23  as soon as I got here into the building, all of a sudden I felt

24  the exact opposite of what I was before.  I am excited for the

25  experience, and I hope to get selected.

1    MR. MURDOCH:  Great.  Thank you.  And I'll just tell

2    you, this is -- really is a neat process and something neat to

3    go through.  So, thank you for that.

4    Was there anyone else who raised their hand?  Okay.

5    I don't see any other response.

6    I'm going to ask the opposite of that.  Is there

7    anyone who is really not excited to be here today?  Okay.  I'm

8    going to start off in the back row.  Mr. -- is it Tarbet?

9    PROSPECTIVE JUROR:  Yeah.

10   MR. MURDOCH:  Or, I'm sorry.

11   PROSPECTIVE JUROR:  Yeah.  Juror Number 6.

12   MR. MURDOCH:  Sorry about that.  Yes.  Could you

13   explain?

14   PROSPECTIVE JUROR:  Ah, just missing a lot of work

15   and the inconveniences of life, so --

16   MR. MURDOCH:  Okay.  Was there anyone else on the

17   back row?  And Juror Number 6, I appreciate that.  Thank you

18   for being honest and candid.

19   Okay.  Was there anyone on the second row?

20   Okay.  The third row, was there -- I believe Number

21   37.  We need to get the microphone to you.

22   PROSPECTIVE JUROR:  Just kind of like him, being

23   self-employed, a lot of work, 12-hour days to keep on top.

24   Work for two different companies.  Just long travel.  Besides

25   that, that's it.

1          MR. MURDOCH:  Okay.  Now, you indicated you are a

2     knife maker.

3          PROSPECTIVE JUROR:  Correct.

4          MR. MURDOCH:  That seems really interesting to me.

5          PROSPECTIVE JUROR:  I am the only one that does.

6          MR. MURDOCH:  I would like to talk to you about it.

7          PROSPECTIVE JUROR:  For two companies.

8          MR. MURDOCH:  So, it's mostly the pressures of your

9     work.

10          PROSPECTIVE JUROR:  Of keeping up with the big shows

11     coming up in a week and a half, just -- yeah.

12          MR. MURDOCH:  I see.  Okay.  Thank you for that.

13     Anyone else?

14          Okay.  Let's talk about some things that you are

15     going to -- thank you.  Let's talk about some things you are

16     going to hear about in the trial, some terms.

17          One of the terms you are going to hear is that my

18     client is presumed to be innocent throughout this trial.  As of

19     right now and throughout the trial, he's presumed to be

20     innocent.  What does that mean to you?  Does anyone want to

21     share with us what that means to you?

22          PROSPECTIVE JUROR:  He's innocent until he's proven

23     guilty.

24          MR. MURDOCH:  Okay.  I'm going to ask you to identify

25     your number --

1          PROSPECTIVE JUROR:  33.

2          MR. MURDOCH:  -- for the record.  33.  And what was

3   it you said?

4          PROSPECTIVE JUROR:  I said he's innocent until he's

5   proven guilty or innocent.

6          MR. MURDOCH:  So, as of right now, in your mind --

7          PROSPECTIVE JUROR:  He's innocent.

8          MR. MURDOCH:  You say he's innocent.

9          PROSPECTIVE JUROR:  He's innocent.

10          MR. MURDOCH:  Is there anyone here who disagrees with

11   that or who has a different definition or viewpoint?

12          Is there anyone here that can't look at my client

13   right now, as he's sitting there, and say in your own mind that

14   he's not guilty?

15          And just for the record, I'll say "no response"; when

16   we don't have anyone.  We just want to make a record.  So,

17   yeah, no response to that.

18          Let me ask a hypothetical.  Let's say you are all

19   selected to be jurors on this case, and we get ready to begin

20   the evidence portion of the case.  And without hearing any

21   evidence, the judge tells you you have got to decide whether

22   he's guilty or not guilty.  What would your answer be?

23          Okay.  So, let's talk about this.  Is it Miss -- or

24   Juror Number 32?

25          PROSPECTIVE JUROR:  Yes.

1          MR. MURDOCH:  Okay.  What was your response?

2          PROSPECTIVE JUROR:  I said that that's not how our

3     system works.  And at that point, I would have to say that I

4     couldn't be part of the jury, because I can't make a decision

5     without the evidence.

6          MR. MURDOCH:  Okay.  And I believe Juror Number 5.

7          PROSPECTIVE JUROR:  5.  That's what I was thinking,

8     too, is you're asking me to, like -- or I would be expected to

9     judge that before I even heard anything.  So, if somebody

10    else -- you know, if they have any other opinion that he might

11    not be guilty or whatever like that, you should be able to be

12    neutral at all times until the people decide.  And that's not

13    always easy based on your own opinion, but --

14         MR. MURDOCH:  Yeah.  Well, thank you for sharing.  I

15    thought I saw another hand out of the corner of my eye.  Was

16    there anyone over in this area?  Okay.

17         PROSPECTIVE JUROR:  Can I say something to that?  So

18    we have committed to the judge -- Number 32 again.

19         MR. MURDOCH:  Okay.

20         PROSPECTIVE JUROR:  We have committed to the judge

21    that we will listen to all of his instructions.  And so if he

22    tells us that that's what the law tells us to do, I can't say

23    that he's guilty or innocent.  If the judge instructs us to

24    make a decision, I just have to excuse myself and let the law

25    take whatever process it's going to do.  But for me personally,

1    I would have to excuse myself at that point.

2              MR. MURDOCH:  Okay.

3              PROSPECTIVE JUROR:  Because we committed to do what

4    the judge says.

5              MR. MURDOCH:  Okay.  Does anyone have a different

6    view on that?  If the judge asked to you decide whether he's

7    guilty or not guilty without hearing any evidence?  Juror

8    Number --

9              PROSPECTIVE JUROR:  19.

10             MR. MURDOCH:  -- 19.

11             PROSPECTIVE JUROR:  Well, if he's presumed innocent,

12   and no evidence is presented to the contrary, then I think as a

13   jury you have to find him innocent.

14             MR. MURDOCH:  Does anyone disagree with that?  I

15   think that's -- that's the concept of being presumed innocent.

16   You are innocent right now.  And until the government proves

17   otherwise, you remain innocent.

18             Is there anyone who disagrees with that?  Let me ask

19   you this.  If -- if the government does not prove its case

20   beyond a reasonable doubt, is there anyone here who would not

21   be able to acquit my client?

22             I used a legal term there.  Acquit, that means find

23   him not guilty.  Is there anyone who would not be able to do

24   that if the government didn't prove its case beyond a

25   reasonable doubt?

1          Okay.  No response.

2          You are going to hear evidence throughout the course

3   of this trial.  Obviously, there's going to be witnesses

4   presented and exhibits and things like that.  And if my client

5   chooses not to testify during that portion, during the evidence

6   portion, would that make anyone feel like he's not guilty?

7          Or, excuse me.  Let me ask that a better way.  Would

8   that -- if my client does not testify during this trial, is

9   that going to make anyone feel like he's guilty?  Is there

10  anyone here -- I believe I saw a head nodding.  Was that Juror

11  Number 4?  Do you have a comment on that?

12         PROSPECTIVE JUROR:  Not really.  I mean, I guess it's

13  obviously a tricky thing.  You can't take the stand and defend

14  yourself, I mean, I don't know.  Why wouldn't you at least give

15  it a go, it seems.  So, unless -- unless the face reader here

16  in front of me --

17         MR. MURDOCH:  Hold on a second.  We'll get the

18  microphone.  I want to talk about that a little bit.

19         Okay.  Could you say it over again?

20         PROSPECTIVE JUROR:  I think, you know, I will just

21  speak for myself.  But it seems like, I mean, this kind of a

22  thing you would probably want to explain.  The person, he would

23  want to explain why he was doing what he was up to or not, I

24  would think.  But that's just me guessing, you know.

25         MR. MURDOCH:  Okay.

1        PROSPECTIVE JUROR:  Why wouldn't you want to defend

2   yourself, I guess, would be my question to ask back at the --

3   at the client there.  Why wouldn't you want to?

4        MR. MURDOCH:  If the judge instructed you that my

5   client does not have any -- or has a right not to testify, and

6   that that --

7        PROSPECTIVE JUROR:  Yes.

8        MR. MURDOCH:  -- cannot be held against him, would

9   that change your view on that?

10       PROSPECTIVE JUROR:  Oh, I totally know that that's

11  his right to do or not do.  I just, like I said personally,

12  it's like, you know, if he's not guilty, then he should

13  probably sit up there and, like, say that he's not guilty about

14  that then.  That would probably go a long way, at least in my

15  mind, you know.

16       But that's not going to prevent me from one way or

17  the other.  I think we are all human, and it's like why

18  wouldn't we want to expect another human to stand up and say,

19  you know, that they are not or they are.  You know.  So, lying

20  sucks, dude, straight up.  But it happens every day, right?

21  So, what do you do?

22       MR. MURDOCH:  I can certainly understand that.  I

23  mean, we are curious.

24       PROSPECTIVE JUROR:  Right.

25       MR. MURDOCH:  We would all like to know.

1          PROSPECTIVE JUROR:  Yeah.  Why not.

2          MR. MURDOCH:  Is there anyone who feels the same way,

3    who would have that question in their mind?  Juror 3.

4          PROSPECTIVE JUROR:  Uh-huh.  Yeah, I guess I would

5    have to say that I would agree that if he couldn't or if he

6    didn't want to, I guess, defend himself, I guess I would -- it

7    would cause me to doubt a little bit his integrity.  But other

8    than that --

9          MR. MURDOCH:  Okay.  Is there anyone who -- who would

10   think -- who can think of a reason why a person wouldn't want

11   to testify even if they are innocent?  Juror 1.

12         PROSPECTIVE JUROR:  1.  Sometimes people, due to

13   mental health issues, developmental issues, nervousness, they

14   are not their best advocate.  In other words, when it comes to

15   being able to speak, they are not able to tell their story in

16   an appropriate manner, and it's not always best for them to

17   tell their own story.  They just shouldn't speak.

18         MR. MURDOCH:  Thank you.  Is there anyone who agrees

19   with that or disagrees with that?

20         PROSPECTIVE JUROR:  Yeah.  That's what I was

21   thinking, too.  I mean, some people, they tell on themselves,

22   maybe.  Again, like you are judging somebody by the way they

23   look, or if they look guilty or, maybe what they said sounds

24   guilty.  I don't know.  It just doesn't seem to me to be fair

25   to them if they couldn't defend -- I mean, defending themselves

1    is one thing, but knowing the right things to say sometimes may

2    not always be the right answer.

3            So, I don't know.  I don't know that, me personally,

4    if I heard somebody's testimony or not, I don't think that

5    would make a difference.  I mean, but some people are -- we

6    seen and heard that earlier about the way they look, you know.

7    Maybe they -- the person's got that opinion that he looks like,

8    I don't know, a gambler or whatever.

9            So, I think it's pretty -- it's important for us to

10   keep neutral.  That's -- you know, when -- sometimes, I don't

11   know.  Me, I get myself into a lot of trouble, too, by saying

12   the wrong things when -- you know, but honestly, as I got

13   older, I realized that that is your only defense sometimes is

14   to be able to say what you know.

15           And I so agree kind of like with what he said about

16   being able to defend yourself.  And saying does it make you

17   look guilty?  I don't think so.  I think silence is probably

18   golden at certain times, so --

19           MR. MURDOCH:  Okay.  Anyone else have any comments

20   they wanted to share on that?

21           Yes, Juror 6.

22           PROSPECTIVE JUROR:  Yeah, I guess I would say if the

23   law and order shows they're true, then a defendant can entrap

24   himself.  So, going up on the stand is definitely going to be

25   something that he may want to avoid due to other evidence

1    coming in or something like that.

2            So, I mean, it's his right, and I don't think that

3    necessarily makes you guilty or not.  So --

4            MR. MURDOCH:  Let me ask you this.  What if I didn't

5    feel that the government had proved its case?  Because how this

6    is going to progress, is the government is going to take their

7    turn.  They are going to start off, and they are going to

8    present the evidence to the jury, whoever we pick, and then

9    they will rest.

10           And after they rest, then it's our turn.  Once they

11   rest, they don't get to present any more evidence unless they

12   rebut something that -- that -- the evidence that we bring up.

13   So, let's say, at that stage, I don't feel that they have met

14   their burden of proof, and I advise my client, "Don't get up

15   and testify.  Don't give them another shot at that."

16           Would that seem to you a plausible reason why he

17   would not want to get up there and testify?

18           PROSPECTIVE JUROR:  Sure.  Yeah.  I guess the burden

19   of proof is on the prosecutor, so if they don't do it, then

20   hopefully you have the same feeling that, I guess, I would have

21   in that, that they didn't meet.  So --

22           MR. MURDOCH:  Okay.  Well, thank you.  Let me just

23   ask this a little bit different way.  Is there anyone here that

24   believes that my client has to testify to defend himself during

25   this trial?

1          No response.

2          Okay.  Juror 27, I'm going to -- get the microphone.

3          PROSPECTIVE JUROR:  Hello.

4          MR. MURDOCH:  Hello.  I have a question based on one

5     of your comments.

6          PROSPECTIVE JUROR:  Okay.

7          MR. MURDOCH:  You talked about your brother going

8     through the system, and you talked about the importance of a

9     fair trial.  I'm curious to know, in your mind, what is a fair

10    trial?

11         PROSPECTIVE JUROR:  What is a fair trial?  Well, I

12    think all viewpoints should be put out there.  I mean -- or not

13    all viewpoints.  I think all evidence should be out there, and

14    that's what everything should be going towards.  And, I mean, I

15    think that the -- the -- you know, if it does come towards

16    being guilty, I think that the punishment should meet the

17    crime.

18         I mean, I think it should all be fair in that

19    instance.  I mean, if -- if he's not guilty, he's not guilty.

20    Or if he's guilty, I mean, depending on what we find him guilty

21    on, it should suit those -- the -- kind of the charges.  I

22    mean, I don't think like life in prison for some things is what

23    people should get for certain crimes that are committed.  I

24    think, you know, it's not so much even an eye for an eye or a

25    tooth for a tooth, but I think everything should be fair

1  regardless.  Does that make sense?

2          MR. MURDOCH:  It does, and I appreciate your view.

3  Let me narrow this down a little bit.

4          PROSPECTIVE JUROR:  Okay.

5          MR. MURDOCH:  And not talking about what punishment

6  may or may not come.

7          PROSPECTIVE JUROR:  Uh-huh.

8          MR. MURDOCH:  What the verdict would be or anything

9  like that, just this process here of the trial when we're

10  deciding -- when the jury decides whether or not he's guilty or

11  not guilty based on the evidence they receive.  In your mind,

12  what makes that process fair?

13          PROSPECTIVE JUROR:  The evidence.  I mean, it has

14  to -- you know, everything has to line -- it's kind of like the

15  guy in front of me was saying.  It's like a puzzle.  Everything

16  has to fit together in order for to us get that verdict that

17  we're going to get.

18          Especially as a personal thing, we can't take any

19  personal experiences that we've had in the past or anything

20  like that and have that weigh on our outcome.  We have to look

21  at everything as an individual, as individual pieces and make

22  our choices -- make my choice based off of the evidence right

23  there in the hand.  I mean --

24          MR. MURDOCH:  Okay.  What if the puzzle didn't fit

25  together for you?

1              PROSPECTIVE JUROR:  Then I wouldn't sway one way or

2     the other.  I would make it known that that's -- you know, this

3     doesn't add up to me.  I mean, it -- I mean, I think that it

4     either is or isn't.  I mean, there's not really an in between.

5     I mean, I guess if you have that in between feeling, then it

6     would be a hung jury.  So --

7              MR. MURDOCH:  Okay.  Thank you.

8              PROSPECTIVE JUROR:  You're welcome.

9              MR. MURDOCH:  I appreciate that one.

10             Those are all the questions I have, Your Honor.

11             THE COURT:  All right.  Thank you.

12             Does the government pass this panel for cause?

13             MS. MCGRADY:  Yes, Your Honor.  Thank you.

14             THE COURT:  Does the defense pass this panel for

15    cause?

16             MR. MURDOCH:  Yes, Your Honor.

17             THE COURT:  All right.  At this point in time, we are

18    going to do what's called the peremptory challenges.  I kind of

19    explained that earlier.  That's where each side gets a set

20    number of challenges they can make to anybody for any reason or

21    even for no reason.

22             I affectionately refer to it as getting voted off the

23    island.  It's done by passing a piece of paper back and forth,

24    and it takes a few minutes to do it.  So, I'm asking that you

25    all just sit quietly for a few minutes while they go through

1  this process.  When they are done, then we will have our jury.

2             MR. MURDOCH:  Your Honor, before we start this, can

3  we have a sidebar?

4             THE COURT:  We can.  In fact, I was just going to ask

5  you both -- well, let's just have a sidebar and see if we are

6  going the same place.

7        (Sidebar.)

8             MR. MURDOCH:  My wife is out there taking notes for

9  me.  She's my jury consultant, and can I have her come up to

10  the table and be with me on this?

11            THE COURT:  Do you have any problem with that?

12            MR. SHIRTS:  No.

13            THE COURT:  She doesn't have a degree in jury

14  consulting?  She's not.

15            MR. MURDOCH:  She's just smart.  She's smart as a

16  whip.

17            THE COURT:  I have no problem with that.  I do think

18  that maybe we ought to tell the jury.  Well, I don't even care.

19  I will leave it up to you.

20            Do you understand how it works on the alternate?

21  These three are the -- these are the alternates.  So, after you

22  have done all of these, then you each will select one of those

23  and the one left is the alternate.

24            MS. MCGRADY:  Okay.

25            THE COURT:  So, don't select one of those three

1   earlier.

2           MS. MCGRADY:  Understood.

3           THE COURT:  Okay?

4           MR. MURDOCH:  Okay.

5           THE COURT:  Great.  Thanks.

6       (End of sidebar.)

7           THE COURT:  All right.  We are going to begin the

8   process now.

9       (Pause in the proceedings.)

10          THE COURT:  All right.  Ladies and gentlemen, I am

11  going to read a string of numbers in no particular order.  If

12  your number is called, if you would please gather your

13  belongings and go to the back of the courtroom and sit on the

14  bench for a minute, when we are all done with that, there

15  should be 12 jurors and an alternate left.  We will confirm

16  that, and then we will excuse everybody else.

17          So --

18          MR. MURDOCH:  Your Honor?

19          THE COURT:  Yes.

20          MR. MURDOCH:  May I just offer an explanation?  I had

21  someone come up and sit with me at the table for a moment.

22          THE COURT:  Yes.

23          MR. MURDOCH:  Ladies and gentlemen, that was my jury

24  consultant.  She takes notes for me.  I can't talk and take

25  notes at the same time, and so that's all it was.

1          THE COURT:  That's all you are going to tell them?

2          MR. MURDOCH:  Well, she's my wife, too.

3          THE COURT:  Okay.

4          All right.  Numbers 33, 1, 13, 5, 15, 16.  Counsel, I

5     better ask on that one.

6          Pam, do you know?  Is that 16 or 6?  Okay.

7       (Pause in the proceedings.)

8          THE COURT:  Okay.  16, 11, 3, 25, 4, 38, 19, 23, 18,

9     14, 27, 30, 31.

10         Counsel, I need to see you both at sidebar.

11      (Sidebar.)

12         THE COURT:  I may have misread a number.  What is

13    that number?

14         MS. MCGRADY:  16.

15         THE COURT:  So, that one is gone.

16         MS. MCGRADY:  Uh-huh.

17         THE COURT:  We are okay.

18         MS. MCGRADY:  I had the same conclusion.  I marked --

19    (unintelligible.)

20         THE COURT:  Okay.  We're good then.

21         THE COURT REPORTER:  Ms. McGrady, you need stay near

22    the mike.

23      (End of sidebar.)

24         THE COURT:  Kathy, she said, "I had the same

25    problem."

1          All right.  Counsel, do we have the correct remaining

2     people?

3          MS. MCGRADY:  Yes, Your Honor.

4          MR. MURDOCH:  Yes, Your Honor.

5          THE COURT:  There are 12 of you plus one alternate.

6     You will be the jury in this case.

7          What I'm going to do first is have you stand and

8     swear you in as jurors.

9          Pam, does the alternate stand in federal court?  All

10    13, right?

11         COURTROOM DEPUTY:  Yes.

12         THE COURT:  All 13 of you need to stand and raise

13    your right hand.

14         COURTROOM DEPUTY:  You each do solemnly swear that

15    you will well and truly try the cause at issue and a true

16    verdict render therein according to the law and evidence, so

17    help you God?

18     (Chorus of "I do.")

19         THE COURT:  Please be seated.  Was there any of you

20    that were unable to take that oath?

21         All right.  I'm going to move you around real quickly

22    so we know where you are going to be seated throughout the

23    trial, and then I'll excuse everybody else.

24         Juror Number 17, if you will take the chair right

25    next to Juror Number 2.  And then you are Number 36?  You get

1    the chair next to her.  37, you are next to her.  Other side.

2    I'm sorry.  Other side of her.  Yes.  I like to leave the

3    further ones empty, so you don't have to walk as far when you

4    come in.

5           All right.  Then Number 22, you will sit in the other

6    empty seat in the back row.  You are Number -- let's see.

7    Which number are you?  24.  Okay.  You will be right down in

8    the last empty chair.  Well, no.  The two of you need to shift

9    over two spaces, and then you will be next to her.  Right

10   there.

11          And you are Juror 26.  If you will take the seat next

12   to her.  And then the other two will have the last two seats in

13   the order you are sitting now.

14          Counsel, does that look correct to you?

15          MS. MCGRADY:  Yes, Your Honor.

16          MR. MURDOCH:  Yes, Your Honor.

17          THE COURT:  All right.  The rest of you in the back

18   of the room, we really appreciate you're being here today.  We

19   appreciate your time and your service, and you are off the jury

20   for the -- for the near future at least.

21          You might want to check in downstairs, particularly

22   if you need to have an excuse for work.  And you are free to go

23   at this time.

24          Pam, here is that.

25          Normally, at this point in time, I would read to you

1   the pre-evidence instructions.  However, given the lateness of

2   the day, I'm going to wait and do that tomorrow morning.  I

3   will tell you a couple of house rules now that you're here.

4          You are now in charge as much as I am as far as the

5   physical facilities.  If the courtroom is too hot or too cold,

6   you need to tell me that.  I sit up here in this robe, and I

7   get hot rather easy, and I forget about other people.  So, if

8   you get too cold, let me know and we'll make adjustments.

9          We're going to take you to the jury room, show you

10  where that is.  That's where you will report each morning.

11  That's where you will take your breaks.  There will be snacks,

12  treats in there for you.  Lunchtime, you are free to go where

13  you want, but lunch will be about an hour in length.

14          We'll go from 9:00 in the morning till 5:00 o'clock

15  at night each day.  Attorneys, I'm going to ask you to be here

16  at 8:30 in case there's something we need to deal with outside

17  the jury's presence.

18          I think that's all we need to tell them for today.

19  So, Amy, if you'll show them where the jury room is, then you

20  are released for the day.

21          Please do not discuss this case with anyone, either

22  among yourselves or with anyone else, until it's submitted to

23  you for decision.  And Court will be in recess.

24          And put on a smile.  I know you don't want to be

25  here.  Please remember where you are seated, because that's

1   your seat now.

2           (Jury out.)

3           THE COURT:  Counsel, is there anything we need to

4   take up tonight.  We have that one objection.  Do you want to

5   do it tonight or in the morning?

6           MR. MURDOCH:  I'm fine doing it tonight.  Whatever

7   the Court wants to do.  I'm fine either way.

8           THE COURT:  It doesn't matter to me.  I'm here until

9   5:00.

10          MS. MCGRADY:  That would be the government's

11  preference as well, Your Honor.

12          THE COURT:  All right.  Let's be seated, please.

13          Mr. Murdoch, I believe it's your objection.

14          MR. MURDOCH:  It is.

15          THE COURT:  Right?  Just because I'm hearing it

16  tonight doesn't mean I'm going to give you an answer tonight.

17  I might want to sleep on it.

18          MR. MURDOCH:  Your Honor, did you want me to start?

19          THE COURT:  Yes.

20          MR. MURDOCH:  Okay.

21          THE COURT:  If it's your motion or your objection,

22  yes.

23          MR. MURDOCH:  Okay.  And if I get it wrong as far as

24  what's -- what we are talking about, the government can correct

25  me.  But my understanding is the government is going to

1    introduce evidence of the Gateway computer.

2              THE COURT:  Yes.

3              MR. MURDOCH:  My objection is the same that I

4    admitted earlier with regard to the search terms in the Gateway

5    computer, and it's exactly the same.

6              My contention is the computer should not be brought

7    in at all, because the -- there are other people that had

8    control of that and use of that, and I believe it's unduly

9    prejudicial.

10             THE COURT:  So you are talking not only about the

11   evidence on the computer but actual -- the computer itself for

12   purposes of forfeiture should not be brought into this case?

13             MR. MURDOCH:  Well, okay.  Thank you for correcting

14   me.  No.  I'm not objecting to the forfeiture or I don't care

15   about it coming in at that point.  But as far as the -- when we

16   are talking about the meat of the evidence, in essence, the

17   pornography here, I don't believe the computer should be a part

18   of that.

19             If we could bifurcate that or maybe hold that until

20   later in the trial, I think that would be fair.

21             THE COURT:  My plan was to deal with the forfeiture

22   after we had a verdict of innocence or guilty, and I was hoping

23   the parties would stipulate at that point.

24             MR. MURDOCH:  Yes, I think that's appropriate.

25             THE COURT:  Okay.  Counsel, your response.

1          MS. MCGRADY:  Yes, Your Honor.  The fact that

2     somebody else had access to this computer goes to weight and

3     not admissibility.  This Gateway computer is in the forfeiture

4     allegation, because the government's contention is it was used

5     to possess child pornography.

6          And the specifics that we intend to produce about

7     that computer are that during the relevant time frame that this

8     investigation was going on, that Gateway laptop computer was in

9     the residence belonging to the defendant's girlfriend, Karisa

10    Tingey.

11         We anticipate that her testimony will be that during

12    that relevant time frame, she knew that he used and accessed

13    that Gateway computer in addition to herself.  She will testify

14    that she had one user account on that computer named Karisa,

15    and that it was not password protected.  There was another user

16    account on that computer that was password protected that she

17    says the defendant used.

18         She didn't know the password, and she didn't have

19    access that particular user account.  It was entitled "1."  The

20    number "1," was the name of that user account.  Within that

21    particular user account, there is evidence that an application

22    called BlueStacks was installed by that user.

23         And the reason that we made that connection is

24    because the installer agent for that particular program was in

25    the download folder for that particular user.  BlueStacks

1   application is an android emulator.  It allows the computer to

2   operate like a cell phone.  This defendant had an android

3   device.

4           Also within the BlueStacks application is where the

5   child pornography was located.  Also in the BlueStacks

6   applications was a zip file that contained multiple pictures of

7   this defendant, of Karisa Tingey and the two of them together.

8   There were screenshots of this defendant video chatting with

9   unknown individuals.  There were selfie pictures that he had

10  taken.  There were numerous selfie sort of pictures of an erect

11  penis.  There was a nude selfie picture of this defendant that

12  he had taken of himself in the bathtub.

13          There was also evidence that the email address

14  lexinpocatello@gmail.com, which is a very pertinent email

15  address in this case that was also used to possess child

16  pornography, that email address was used to log in to various

17  BlueStacks programs.

18          So, there is a direct connection between this

19  defendant and that particular user account where the child

20  pornography was located.

21          Your Honor, if I had to come into court and wasn't

22  able to present evidence strictly because someone else had

23  access to an electronic device, then I would be very limited in

24  my ability to prosecute child pornography cases.  Because

25  numerous times, if it's outside of a cell phone, it's on a

| | |
|---|---|
| 1 | device that somebody else in the home had access to.  And then |
| 2 | it's my job in trial to eliminate that other person as the |
| 3 | person who is responsible. |
| 4 | So, their objection should go to -- it's an argument |
| 5 | that they can make to the jury on whether or not the government |
| 6 | has proven that he's the person responsible for the child |
| 7 | pornography, but it certainly isn't a reason for this Court to |
| 8 | preclude the government from presenting that part of its |
| 9 | possession case. |
| 10 | THE COURT:  All right.  Thank you. |
| 11 | Mr. Murdoch, you can have the last word. |
| 12 | MR. MURDOCH:  Thank you, Your Honor. |
| 13 | I appreciate counsel's comments.  I just believe that |
| 14 | this evidence is of such a nature that it is -- I guess it's |
| 15 | more potent to people than what we deal with normally. |
| 16 | And so that goes to my prejudicial -- unfairly |
| 17 | prejudicial argument.  I believe that the evidence -- that |
| 18 | because there were other people that used the computer, that |
| 19 | brings up doubt.  But if the juror -- if the jury gets to hear |
| 20 | the evidence that was found on that computer, due to its potent |
| 21 | nature, that's going to be unfair to my client, because I |
| 22 | believe that it will be difficult for them to separate that and |
| 23 | not hold that against my client. |
| 24 | And so that's -- that's the basis of my objection. |
| 25 | Thank you. |

1          THE COURT:  All right.  I don't think there's any way

2     to get around the fact that the government must prove beyond a

3     reasonable doubt that the defendant had access to that account.

4     That's what they have got to prove.

5          But assuming they can do that, then I agree that

6     everything on that computer goes to the weight and the

7     cross-examination.  I'm not going to exclude it just because

8     other people may or may not have had access.  That makes for

9     great cross-examination, but it's not going to make it

10    inadmissible.

11         So, I'll overrule the objection.

12         Anything else for tonight?

13         MS. MCGRADY:  Your Honor, did you want to run quickly

14    through the exhibits that we can preadmit?  I have a couple of

15    those exhibits in my opening PowerPoint, and I just discussed

16    that with counsel.

17         It's up to the Court if you wanted to do that first

18    thing in the morning or today.

19         THE COURT:  Are they just the numbers you're going to

20    read us?

21         MS. MCGRADY:  I'm going to read you the numbers, and

22    then we can --

23         THE COURT:  I'll defer to Pam.  You are okay doing

24    that now?

25         COURTROOM DEPUTY:  Yes, Your Honor.

1          THE COURT:  Do you want to do -- well, we better do

2     it on the record.  So, tell us what numbers you stipulated to.

3          MS. MCGRADY:  There's quite a few, and I'll try to go

4     slowly, so just signal to me if I am moving too quickly.  Okay?

5          The following -- my understanding, and correct me,

6     Mr. Murdoch, we're stipulating to the admission of the

7     following exhibits.

8          1000, 1000A, 1001, 1001A, 1002, 1002A, 1003, 1003A,

9     1004, 1004A, 1005, 1005A, 1006, 1006A, 1007, 1007A, 1007B,

10    1008, 1008A, 1009, 1009A, 1010, 1010A, 1011, 1011A, 1012, 1013,

11    1014, 1015, 1016, 1017, 1018, 1019, and then 1021.  I switched

12    how I was saying that.  I'll switch it and keep it consistent.

13         1022, 1023, 1025, 1029, 1030, 1031, 1031A, 1032,

14    1032A, 1033, 1033A, 1034, 1034A, 1035, 1035A, 1036, 1036A,

15    1037, 1037A, 1038, 1038A, 1039, 1039A, 1040, 1040A, 1041,

16    1041A, 1044, 1044A, 1045, 1045A, 1046, 1047, 1048, 1049, 1051,

17    1051A, 1056, 1056A, 1057, 1057A, 1058, 1058A, 1060, 1060A,

18    1061, 1062, 1063, 1064, 1065, 1066, 1066A, 1067, 1067A, 1068,

19    1068A, 1069, 1069A, 1070, 1070A, 1071, 1071A, 1072, 1072A,

20    1073, 1073A, 1074, 1075, 1076, 1087, 1088, 1089, 1089A, 1090,

21    1090A, 1091, 1091A, 1091B, 1091C, 1091D, 1091E, 1093, 1093A,

22    1094, 1094A, 1095, 1096, 1097, 1098, 1099, 1106, 1107, 1112,

23    1113, 1114, 1115.

24         Although I will note that this will particularly

25    relate to Count Eight, which we believe would be the second

1    phase of the trial on Count Eight.

2              1119, 1120, 1121, 1123, 1124, 1124A, 1124B, 1124C,

3    1125, 1126, 1126A, 1127, 1127A, 1128, 1128A, 1129, 1132, and

4    then 1133.  On 1133, again that would be on Count Eight only.

5              THE COURT:  All right.  Mr. Murdoch, did she read

6    those correctly?

7              MR. MURDOCH:  Yes, she stated those correctly, Your

8    Honor.

9              THE COURT:  And am I correct what that means is that

10   those exhibits can come in without objection?

11             MR. MURDOCH:  That is correct.

12             THE COURT:  Does the stipulation go any further than

13   that?

14             MS. MCGRADY:  No, Your Honor.  Just that they will be

15   admitted into evidence.

16             THE COURT:  Okay.  Great.  And then we will see you

17   back here at 8:30 tomorrow morning.

18         (Exhibits 1000, 1000A, 1001, 1001A, 1002, 1002A, 1003,

19   1003A, 1004, 1004A, 1005, 1005A, 1006, 1006A, 1007, 1007A,

20   1007B, 1008, 1008A, 1009, 1009A, 1010, 1010A, 1011, 1011A,

21   1012, 1013, 1014, 1015, 1016, 1017, 1018, 1019, 1021, 1022,

22   1023, 1025, 1029, 1030, 1031, 1031A, 1032, 1032A, 1033, 1033A,

23   1034, 1034A, 1035, 1035A, 1036, 1036A, 1037, 1037A, 1038,

24   1038A, 1039, 1039A, 1040, 1040A, 1041, 1041A, 1044, 1044A,

25   1045, 1045A, 1046, 1047, 1048, 1049, 1051, 1051A, 1056, 1056A,

1   1057, 1057A, 1058, 1058A, 1060, 1060A, 1061, 1062, 1063, 1064,

2   1065, 1066, 1066A, 1067, 1067A, 1068, 1068A, 1069, 1069A, 1070,

3   1070A, 1071, 1071A, 1072, 1072A, 1073, 1073A, 1074, 1075, 1076,

4   1087, 1088, 1089, 1089A, 1090, 1090A, 1091, 1091A, 1091B,

5   1091C, 1091D, 1091E, 1093, 1093A, 1094, 1094A, 1095, 1096,

6   1097, 1098, 1099, 1106, 1107, 1112, 1113, 1114, 1115, 1119,

7   1120, 1121, 1123, 1124, 1124A, 1124B, 1124C, 1125, 1126, 1126A,

8   1127, 1127A, 1128, 1128A, 1129, 1132, and 1133 admitted.)

9            MS. MCGRADY:  Thank you.

10           THE COURT:  Court will be in recess.

11       (Pause in the proceedings.)

12           MR. MURDOCH:  Oh, Judge?

13           THE COURT:  Yes.

14           MR. MURDOCH:  I'm sorry.  I forgot to ask.  Are we

15   going to be working through lunch tomorrow or do we take a

16   lunch, too?

17           THE COURT:  We will take a lunch.  I guess it's up to

18   you and how many objections you raise, but I'm planning on

19   taking a lunch.

20           MR. MURDOCH:  Thank you.

21           THE COURT:  My plan is to go 9:00 to 5:00 with an

22   hour lunch and two 15-minute breaks.

23           MR. MURDOCH:  Okay.

24       (Recess 4:35 p.m.)

25

1

2                          PLAINTIFF'S EXHIBIT INDEX

3    Exhibit No.                                Marked     Admitted

4    1000, 1000A, 1001, 1001A, 1002, 1002A, 1003, 1003A,
     1004, 1004A, 1005, 1005A, 1006, 1006A, 1007, 1007A,
5    1007B, 1008, 1008A, 1009, 1009A, 1010, 1010A, 1011,
     1011A, 1012, 1013, 1014, 1015, 1016, 1017, 1018, 1019,
6    1021, 1022, 1023, 1025, 1029, 1030, 1031, 1031A, 1032,
     1032A, 1033, 1033A, 1034, 1034A, 1035, 1035A, 1036, 1036A,
7    1037, 1037A, 1038, 1038A, 1039, 1039A, 1040, 1040A, 1041,
     1041A, 1044, 1044A, 1045, 1045A, 1046, 1047, 1048, 1049,
8    1051, 1051A, 1056, 1056A, 1057, 1057A, 1058, 1058A, 1060,
     1060A, 1061, 1062, 1063, 1064, 1065, 1066, 1066A, 1067,
9    1067A, 1068, 1068A, 1069, 1069A, 1070, 1070A, 1071, 1071A,
     1072, 1072A, 1073, 1073A, 1074, 1075, 1076, 1087, 1088,
10   1089, 1089A, 1090, 1090A, 1091, 1091A, 1091B, 1091C, 1091D,
     1091E, 1093, 1093A, 1094, 1094A, 1095, 1096, 1097, 1098,
11   1099, 1106, 1107, 1112, 1113, 1114, 1115, 1119, 1120, 1121,
     1123, 1124, 1124A, 1124B, 1124C, 1125, 1126, 1126A, 1127,
12   1127A, 1128, 1128A, 1129, 1132, and 1133                 134

13

14                                 --oOo--

15                      COURT REPORTER'S CERTIFICATE

16

17       I, KATHERINE EISMANN, certify that the foregoing is a

18   correct transcript from the record of proceedings in the

19   above-entitled matter.

20

21   Date:  October 7, 2019.

22                                _Katherine Eismann_

23                                _____

24                                Katherine Eismann, CRR, RDR

25